IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR
MIAMI DADE COUNTY, FLORIDA

Case No.:

GRETCHEN HENTSCH-COWLES,

      Plaintiff,

v.

COLE, SCOTT & KISSANE, P.A.,

      Defendant.

_____/

## COMPLAINT FOR BREACH OF CONTRACT, DECLARATORY AND INJUNCTIVE RELIEF, AND DISGORGEMENT

Plaintiff, GRETCHEN HENTSCH-COWLES ("Plaintiff" or "Gretchen"), sues Defendant, COLE, SCOTT & KISSANE, P.A. ("CSK" or "Defendant"), and alleges as follows:

### I. PARTIES

1. Plaintiff GRETCHEN HENTSCH-COWLES is an individual who is a resident of the State of Texas.

2. Defendant COLE, SCOTT & KISSANE, P.A. is a Florida professional association with its principal place of business in Miami-Dade County, Florida.

### II. JURISDICTION AND VENUE

3. This is an action for damages exceeding $50,000, exclusive of interest, costs, and attorneys' fees, and for injunctive and equitable relief.

4. This Court has subject matter jurisdiction pursuant to Article V, Section 5(b) of the Florida Constitution.

5. Venue is proper in Miami-Dade County, Florida because Defendant maintains its principal

office in Miami-Dade County and the contracts at issue mandate Miami-Dade County as the exclusive venue for disputes concerning attorneys' fees and the engagement.

### III. GENERAL ALLEGATIONS

6.  Plaintiff retained CSK to represent her in complex federal litigation pending in the United States District Court for the Middle District of Florida.

7.  CSK drafted and required Plaintiff to execute an Amended Engagement Agreement dated October 24, 2024 (the "Engagement Agreement"). A true copy of the Engagement Agreement is attached as **Exhibit 1**.

8.  The Engagement Agreement imposed guaranteed hourly fees at elevated rates and expressly contemplated that CSK's fees, both existing and future, would be secured through commercially standard promissory notes.

9.  Pursuant to the Engagement Agreement, Plaintiff executed multiple promissory notes in favor of CSK (collectively, the "Promissory Notes"), totaling approximately $479,383.53.

10. Each Promissory Note was drafted by CSK and contains the same unambiguous maturity provision: all principal and accrued interest are due and payable six (6) months following the death of Russell Cowles. A representative copy of the Notes is attached as **Exhibit 2**.

11. The Promissory Notes contain no acceleration clause tied to settlement, liquidity, or recovery of funds.

12. The parties do not dispute that Russell Cowles is alive. Accordingly, under the plain language of the Promissory Notes, no payment is presently due.

13. On October 30, 2025, Plaintiff and the other parties to federal litigation executed a written Settlement Agreement resolving the case.

14. The Settlement Agreement expressly requires that settlement proceeds be paid directly to

Plaintiff, without any authorization for payment to CSK or to any attorney trust account.

15. Unbeknownst to Plaintiff, CSK gave their wiring details to the settling parties immediately after the settlement agreement was signed without Plaintiff's knowledge or authorization.

16. The Settlement Agreement contains no carve-out, escrow provision, or lien authorization permitting CSK to intercept, withhold, or redirect Plaintiff's settlement proceeds.

16. Following execution of the Settlement Agreement, Plaintiff repeatedly asked CSK to confirm whether her wiring instructions had been provided to the settling parties.

17. For weeks, CSK deliberately refused to answer this straightforward and material question.

18. Approximately three weeks after settlement, CSK disclosed, after persistent inquiry, that it had provided its own trust account wiring instructions, not Plaintiff's, to the settling parties.

19. Plaintiff immediately objected in writing, stating that she never authorized settlement funds to be sent to CSK, CSK acted unilaterally and without authority, and its conduct was unethical and contrary to the parties' agreements.

20. Despite this objection, CSK continued to hold and assert control over a substantial portion of Plaintiff's settlement proceeds.

21. CSK has claimed entitlement to payment "from the funds presently held in its escrow account," notwithstanding the express language of the Promissory Notes and the Settlement Agreement.

22. CSK's actions constitute a repudiation of the contracts it drafted and required Plaintiff to sign, and an unlawful attempt to force early payment of fees that are not yet due.

23. On January 6, 2026, the United States District Court for the Middle District of Florida entered a written Order denying CSK's Motion for Determination of Entitlement to Payment of Attorneys' Fees & Costs Post-Settlement. *See Cowles v. Hentsch-Cowles*, Case

No. 2:23-cv-600-KCD-NPM (M.D. Fla. Jan. 6, 2026). A true copy of the order is attached as **Exhibit 3**.

24. In that Order, the federal court expressly held that CSK's effort to obtain payment from settlement proceeds presented a state-law contract dispute, not a matter within federal jurisdiction, and declined to exercise ancillary jurisdiction over CSK's fee demands.

25. The federal court specifically recognized that: (i) CSK sought payment "now, out of the settlement proceeds currently held in escrow," notwithstanding contractual language deferring maturity; (ii) The dispute centered on the interpretation and effect of promissory notes governing the timing of payment; (iii) Resolution of CSK's claims would require adjudication of independent contract issues under Florida law; and (iv) The parties' agreements contain a mandatory forum-selection clause requiring litigation in Miami-Dade County, Florida.

26. The federal court denied CSK's motion without prejudice, expressly directing that CSK and Plaintiff "are free to litigate the timing of her payments in the courts of Miami-Dade County."

27. The federal court's ruling is significant and persuasive for this Court because it: (i). Confirms that CSK has no judicial authorization to seize, hold, or apply Plaintiff's settlement funds; (ii) Rejects CSK's attempt to use the settled federal action as leverage to rewrite its fee agreements; (iii) Reinforces that this dispute is governed exclusively by Florida contract law and professional conduct rules; and (iv) Validates Plaintiff's position that Miami-Dade County Circuit Court is the proper and exclusive forum for adjudication.

28. CSK's continued retention and assertion of control over Plaintiff's settlement proceeds after the federal court's ruling further evidences bad faith, self-help, and ongoing breach

of contract.

## COUNT I – BREACH OF CONTRACT
### (Promissory Notes and Engagement Agreement)

29. Plaintiff realleges paragraphs 1–28.

30. The Engagement Agreement and Promissory Notes are valid, binding contracts.

31. Plaintiff has fully performed her obligations, including executing promissory notes securing CSK's fees at elevated rates and interest.

32. CSK breached the contracts by: (i)Attempting to accelerate payment absent any contractual acceleration clause; (ii) Asserting a present entitlement to fees not yet due; (iii) Seizing and retaining settlement funds contrary to the agreed payment structure; and d. Acting inconsistently with its own written admissions that it had no right to take Plaintiff's settlement funds.

33. As a direct result of CSK's breach, Plaintiff has suffered damages and loss of use of her settlement funds.

34. Plaintiff is entitled to damages, attorneys' fees, and costs pursuant to the contracts and Florida law.

## COUNT II – DECLARATORY RELIEF

35. Plaintiff realleges paragraphs 1–28.

36. An actual, present, and justiciable controversy exists regarding the parties' rights and obligations under the Engagement Agreement and Promissory Notes.

37. Plaintiff seeks a declaration that: (i) No amounts are presently due under the Promissory Notes; (ii) CSK has no contractual or legal right to Plaintiff's settlement proceeds; (iii) CSK is prohibited from holding, withholding, or applying settlement funds toward its fees prior to maturity; and (iv) Any fee dispute must be litigated exclusively in Miami-Dade

County.

## **COUNT III – INJUNCTIVE RELIEF AND DISGORGEMENT**

32. Plaintiff realleges paragraphs 1–28.

33. CSK is in possession and control of Plaintiff's settlement funds without authorization.

34. Plaintiff has no adequate remedy at law because the continued retention of her funds causes ongoing and irreparable harm.

35. Plaintiff is entitled to temporary, preliminary, and permanent injunctive relief requiring CSK to: (i) Immediately disgorge and return all settlement funds belonging to Plaintiff; (ii) Cease asserting any lien, escrow claim, or right of setoff against those funds; (iii) Refrain from interfering with settlement disbursements; (iv) Provide a full accounting of all settlement funds received or held.

36. The equities overwhelmingly favor Plaintiff, as CSK knowingly drafted a deferred-payment structure and is now attempting to rewrite it through self-help.

## **COUNT IV – UNJUST ENRICHMENT (PLEADED IN THE ALTERNATIVE)**

37. Plaintiff realleges paragraphs 1–28.

38. CSK has been unjustly enriched by retaining and controlling Plaintiff's settlement funds.

39. It would be inequitable for CSK to retain those funds where payment is not yet due and no lien exists.

40. Plaintiff is entitled to restitution and disgorgement of all improperly held funds.

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Enter judgment in favor of Plaintiff and against Defendant; B. Declare that CSK has no present right to Plaintiff's settlement funds; C. Order immediate disgorgement and return of all settlement funds held by CSK; D. Enjoin CSK from further interference with Plaintiff's funds; E.

Award Plaintiff damages, interest, attorneys' fees, and costs; F. Grant such other and further relief

as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury on all issues so triable.

Dated: January 21, 2026.                    THE GIBSON LAW FIRM, P.A.
                                            4720 Salisbury Road, 247-04
                                            Jacksonville, FL 32256
                                            Telephone: 904-493-6021

                                            /s/ Albert D. Gibson
                                            Albert D. Gibson, Esq.
                                            Florida Bar No.: 50765
                                            Primary Email: adg@gibsonlawfirmpa.com

Exhibit 1

COLE, SCOTT & KISSANE BUILDING
9150 SOUTH DADELAND BOULEVARD, SUITE 1400
P.O. BOX 569015

**CSK** | Cole,
Scott &
Kissane
*The Florida Law Firm*

MIAMI, FLORIDA 33256

TELEPHONE (305) 350-5300
FACSIMILE (305) 373-2294
DIRECT LINE (786) 268-6415

cody.german@csklegal.com

October 24, 2024

**AMENDED ENGAGEMENT AGREEMENT ("AGREEMENT") TO SERVE AS COUNSEL TO GRETCHEN HENTSCH-COWLES ("CLIENT" or "YOU") IN CONNECTION WITH LITIGATION PENDING WITH RUSSELL COWLES, JUSTIN STONE, AND U.S. BANK NATIONAL ASSOCIATION**

We are pleased that you have asked Cole, Scott & Kissane, P.A. ("CSK") and to represent you in connection with the above listed matter. This Agreement will serve as confirmation of this engagement and will set forth our mutual understanding regarding the basis upon which we have agreed to undertake such representation. This Agreement will supersede the prior engagement in its entirety for the same litigation.

### SCOPE OF ENGAGEMENT

CLIENT hereby retains and employs CSK to represent her in relation to the matters set forth above and in connection with the with the same parties pending in the US District Court for the Middle District of Florida (Fort Myers) bearing Case Number 2:-23-cv-00600 ("Lawsuit"). CSK will serve as CLIENT's Counsel in connection with Lawsuit. The CLIENT recognizes that she is re-engaging CSK for the Lawsuit after voluntarily terminating the relationship previously and CSK is not responsible for any of the acts taken by successor counsel from the law firm Block & Scarpa.

**Cole, Scott & Kissane**
www.csklegal.com

Miami | Fort Lauderdale West | Fort Lauderdale East | West Palm Beach | Orlando | Jacksonville
Tampa | Bonita Springs | Pensacola | Fort Myers | Tallahassee | Key West

Page 2

CLIENT recognizes and agrees that she has been advised to have separate counsel represent her in connection with the terms of this Agreement and the promissory notes associated with the same. CLIENT recognizes and agrees that she presently owes CSK a total of $32,527.59 which was due and owed as a result of CSK's representation of CLIENT prior to the CLIENT's prior termination of CSK. As a condition of CSK agreeing to appear again as counsel to CLIENT in the Lawsuit, CLIENT has agreed to sign a commercially standard promissory note with CSK in the amount of $32,527.59 with 8% percent annum interest accruing on the balance commencing June 1, 2024 ("Past Due Promissory Note").

### GUARANTEED HOURLY FEES

IN CONSIDERATION of the services rendered in representing CLIENT, and to account for the anticipation that the CLIENT may not be able to pay CSK for the services rendered until after her father passes away and she receives an inheritance as a result of same, from the date of this Agreement forward, CLIENT hereby agrees to pay hourly for legal services rendered and advancement of costs in relation to this engagement subject to the Billing Guidelines enclosed herewith as **Schedule A.**

The anticipated CSK attorneys who will be working on this engagement are the following partners: Cody German and Andrew Simon whose time will be billed at the hourly rate of $650 per hour and may be assisted by associates in CSK's Bonita Springs and Tampa offices selected by the above-referenced partners whose time will be billed at the hourly rate of no greater than $400 per hour (hereinafter, the "Attorneys"). CSK may use its discretion when staffing the file with its professionals and shall keep CLIENT apprised of developments in the case and provide non-standard filings to CLIENT for review before filing. Paralegals, if utilized, will bill at the rate of $225 per hour. As set forth in the Billing Guidelines, CSK must staff the Litigation

**Cole, Scott & Kissane**
www.csklegal.com

Miami | Fort Lauderdale West | Fort Lauderdale East | West Palm Beach | Orlando | Jacksonville
Tampa | Bonita Springs | Pensacola | Fort Myers | Tallahassee | Key West

Page 3

appropriately and with deliberate attention paid to the experience level of team members. It is expressly understood by CSK that partners should not perform associate-level work, associates should not perform paralegal-level work, and paralegals should not perform administrative assistant work.

CSK will render monthly statements to CLIENT in accordance with the Billing Guidelines. CLIENT agrees to sign commercially standard promissory notes each time the legal fees and costs incurred increase in $50,000 increments. CLIENT agrees to sign a commercially standard promissory note in the amount of $50,000 at the time of signing this Agreement which shall serve to account for the first $50,000 increment of legal fees and costs incurred after signing this Agreement. The promissory note signed in conjunction of this Agreement shall serve as the same or substantially similar form for any future promissory notes entered into as a result of this Agreement. For each promissory note entered into pursuant to this Agreement, interest shall accrue at the rate of 8% per annum commencing on eight months after the date in which the $50,000 increment materialized, i.e. if the promissory notes are satisfied in full within 8 months of being executed no interest will be charged.

CLIENT further understands that the matters upon which CSK will render advice and provide legal services are complex and sensitive in nature. CLIENT understands that CSK reserves the right to withdraw from the representation if the CLIENT is unwilling or refuses to sign a promissory note consistent with this Agreement.

Unless all promissory notes with CLIENT and CSK are previously deemed satisfied in full by CSK, CLIENT and/or CLIENT's independent legal counsel shall notify CSK at the following email addresses within thirty (30) days after Russell Cowles passes away: (a) Cody. German@csklegal.com, (b) Steven.Safra@csklegal.com, and (c) Richard.Cole@csklegal.com. If

**Cole, Scott & Kissane**
www.csklegal.com

Miami | Fort Lauderdale West | Fort Lauderdale East | West Palm Beach | Orlando | Jacksonville
Tampa | Bonita Springs | Pensacola | Fort Myers | Tallahassee | Key West

Page 4

CLIENT fails to satisfy all CSK invoices and promissory notes in full within twelve (12) months after the passing of Russell Cowles or the disposition of the formal administration of Russell Cowles' Estate, whichever is later, the interest rate on the promissory notes and outstanding legal invoices shall accrue interest at the rate of 15% per annum.

## STATEMENT OF CLIENT'S RIGHTS

THE UNDERSIGNED CLIENT HAS, BEFORE SIGNING THIS CONTRACT, RECEIVED AND READ THE STATEMENT OF CLIENT'S RIGHTS, AND UNDERSTANDS EACH OF THE RIGHTS SET FORTH THEREIN. THE UNDERSIGNED CLIENT HAS SIGNED THE STATEMENT AND RECEIVED A SIGNED COPY TO KEEP TO REFER TO WHILE BEING REPRESENTED BY THE UNDERSIGNED ATTORNEY(S).

THIS CONTRACT MAY BE CANCELLED BY WRITTEN NOTIFICATION TO THE ATTORNEY AT ANY TIME WITHIN 3 BUSINESS DAYS OF THE DATE THE CONTRACT WAS SIGNED, AS SHOWN BELOW, AND IF CANCELLED THE CLIENT SHALL NOT BE OBLIGATED TO PAY ANY FEES TO THE ATTORNEY(S) FOR THE WORK PERFORMED DURING THAT TIME. IF THE ATTORNEY(S) HAVE ADVANCED FUNDS TO OTHERS IN REPRESENTATION OF THE CLIENT, THE ATTORNEY(S) ARE ENTITLED TO BE REIMBURSED FOR SUCH AMOUNTS AS THEY HAVE REASONABLY ADVANCED ON BEHALF OF THE CLIENT.

## CLIENT COOPERATION

CLIENT agrees to cooperate with the Attorneys' requests, to be available to the Attorneys at all reasonable times and places, and to keep Attorneys fully advised, at all times, as to CLIENT's current address and telephone number up until the point in time that all legal fees and promissory notes are satisfied in full. CLIENT also agrees to sign any commercially standard transactional documents required as a result of this unique engagement agreement. CLIENT also understands that she shall have the option to seek separate counsel of her own choosing in connection with the aforementioned transactional documents as CSK will inherently not represent her direct interests in connection with the same.

**Cole, Scott & Kissane**
www.csklegal.com

Miami | Fort Lauderdale West | Fort Lauderdale East | West Palm Beach | Orlando | Jacksonville
Tampa | Bonita Springs | Pensacola | Fort Myers | Tallahassee | Key West

Page 5

### Entire Agreement, Choice of Laws, Forum Selection, and Prevailing Party Fees

This Agreement contains the entire understanding of the relationship between the CLIENT and CSK and there are no other agreements, promises, or undertakings between them except as set forth herein. CLIENT understands that the Lawsuit includes inherently uncertain outcomes and that no guarantees are provided. Payments owed to CSK under this Agreement or the promissory notes are not contingent on any particular result being obtained. CLIENT acknowledges having received a copy of this Agreement. CLIENT also agrees that any action brought arising from or related to this Agreement shall be brought in the trial courts of Miami-Dade County, Florida, and the prevailing party in any such dispute shall be entitled to her/its reasonable legal fees and costs at all levels.

GRETCHEN HENTSCH-COWLES

2024-10-24
DATE

**Cole, Scott & Kissane**
www.csklegal.com

Miami | Fort Lauderdale West | Fort Lauderdale East | West Palm Beach | Orlando | Jacksonville
Tampa | Bonita Springs | Pensacola | Fort Myers | Tallahassee | Key West

**Schedule A**

**BILLING GUIDELINES**

Ms. Hentsch-Cowles expects continuity of staffing throughout the engagement. If changes to attorney staffing are required, the proposed newly assigned attorneys should at least have experience comparable to that of prior attorneys on the engagement, and have hourly rates that are the same as or lower than the hourly rate for the attorney previously assigned. Time spent by a newly assigned attorney to become familiar with a matter or relevant legal authority already consulted by the team is not billable.

Matters must be staffed appropriately and with deliberate attention paid to the experience level of team members. **Partners should not perform associate-level work, associates should not perform paralegal-level work, and paralegals should not perform administrative assistant work.**

Ms. Hentsch-Cowles will not accept time billed by multiple timekeepers for the same task (such as court appearances or meetings) or repetitive efforts.  CSK must seek prior approval from Ms. Hentsch-Cowles before billing such time. While Ms. Hentsch-Cowles understands the periodic need of case team meetings and strategy sessions, CSK should be prepared to explain how the time billed for such interactions provides a direct and reasonable benefit to Ms. Hentsch-Cowles. Ms. Hentsch-Cowles reserves the right to reject any portion of such time deemed to be unnecessary or excessive, and in no event will such time exceed 5% of a monthly invoice.

Alternatives to travel, such as conference calls or video-conferencing, should be used whenever appropriate.  Travel by more than one member of the CSK team must be for good cause, and only after preapproval by Ms. Hentsch-Cowles. Ms. Hentsch-Cowles will not pay fees for time engaged in travel, except for travel time during which services are performed in connection with this matter for which CSK has been engaged. As Ms. Hentsch-Cowles reserves the right to reject disbursements related to travel changes (e.g., rescheduling to an earlier return flight), CSK is encouraged to carefully plan travel to avoid such situations.

Each invoice must provide:

a. the name and billing rate of each attorney and paralegal who worked on the matter;

b. a summary of the various services performed and the number of hours spent by each attorney and paralegal providing these services. The invoice should be organized so that the services performed are delineated in chronological order, and each line item is **clearly described in sufficient detail to enable a substantive review of the task and to demonstrate how the work performed added value that directly benefited Ms. Hentsch-Cowles.**  Block billing is not acceptable, meaning that a specific task should be allocated to one discrete time entry and services description. Each entry should provide a summary in enough detail to clearly identify it on its face with such task and time entry;

c. a detailed, itemized description of expenses and disbursements along with their associated costs; and

d. the total cost for the matter for the month covered by the billing statement.

Ms. Hentsch-Cowles will not reimburse for these items, unless she has specifically approved them in advance:

- computer, email, word processing, dropbox creation, downloading/uploading and scanning charges
- conference room charges
- computerized legal research services (e.g., LexisNexis, Westlaw, PACER, Lex Machina, etc.)
- non-legal outside research services
- overtime pay and expenses (including after-hours local transportation or meals)
- supplies
- library use, library staff and materials
- clerks, secretarial/administrative services, proofreaders
- meals except during **approved business travel**; during depositions, witness interview/ preparation sessions, mediations or meetings approved by Ms. Hentsch-Cowles
- meal service and parking validation for opposing counsel/parties
- private car service for related travel; **for approved business travel,** we will reimburse for taxis, mass transit, mid-sized or smaller car rentals, or personal auto use at the IRS deductible rate
- taxis, limos for daily commutation/outside of travel (even at night)
- phone charges
- fax charges
- non-itemized miscellaneous billing
- internal printing and copying charges
- offsite document storage fees, without prior Ms. Hentsch-Cowles' approval

Ms. Hentsch-Cowles will not pay for professional fees for the following:

- first-year associate work (unless prior approval is granted by Ms. Hentsch-Cowles)
- summer associates
- basic research to educate staff on the general field of the legal matter or litigation being handled
- learning/transition time when a replacement attorney or paralegal is added to the team
- duplicative, redundant, or unnecessary work
- engagement of third-party temporary attorneys or paralegals without prior approval (there will be no markup of hourly rates for these services)
- more than one attorney attending a particular function (e.g., meetings, negotiations, depositions, or court appearances or proceedings) without prior approval
- paralegals at meetings
- more than 8 hours billed per day by one staff member without good cause
- internal conferences beyond 5% of total monthly billing
- preparing, reviewing, discussing or correcting invoices

Exhibit 2

**THIS LOAN IS PAYABLE IN FULL WHEREIN THE ENTIRE PRINCIPAL BALANCE OF $32,527.59 TOGETHER WITH ALL INTEREST ACCRUED HEREBY MUST BE REMITTED TO LENDER AS SPECIFIED HEREIN. DOCUMENTARY STAMP TAX IN THE AMOUNT OF $113.85 REQUIRED UNDER SECTION 201.08, FLORIDA STATUTES HAS BEEN PAID ON THIS PROMISSORY NOTE.**

## PROMISSORY NOTE

$32,527.59                                                          Miami, Florida
                                                                    2ᵗ Oct ., 2024

FOR VALUE RECEIVED, GRETCHEN HENTSCH-COWLES, (the "**Borrower**") hereby unconditionally promises to pay to the order of COLE, SCOTT, & KISSANE, P.A., having an address of 9150 S. Dadeland Boulevard, Suite 1400, Miami, FL 33156    (the "**Noteholder**") the principal amount of $32,527.59 (Thirty Two Thousand Five Hundred Twenty Seven Dollars and 59/100 Cents) (the "**Loan**"), together with all accrued interest thereon, as provided in this Promissory Note (this "**Note**").

1.    1.    Payment Date.

a.    **(a)**    Payment Date. The aggregate unpaid principal amount of the Loan, all accrued and unpaid interest, and all other amounts payable under this Note shall be due and payable six (6) months after the passing of Russell Cowles or the disposition of the formal administration of Russell Cowles' Estate, whichever is later (the "**Maturity Date**").

a.    **(b)**    Prepayment. The Borrower may prepay the Loan, all accrued and unpaid interest, and all other amounts payable under this Note in whole or in part at any time or from time to time without penalty. The Loan may be repaid in all manner pertinent, including through an award of damages or attorneys' fees entered in Borrower's favor in the litigation pending with Russell Cowles, Justin Stone, and U.S. Bank National Association, pending in the United States District Court for the Middle District of Florida (Fort Myers) bearing Case Number 2::-23-cv-00600 or an inheritance, and not excluding any other means.

a.    **2.**    Interest.

a.    **(a)**    Interest Rate. Except as provided in Section 2(b), principal amounts outstanding under this Note shall bear interest at a rate per annum (the "**Interest Rate**") equal to eight percent (8%) commencing on June 1, 2024 until all amounts due hereunder are paid in full.

a.    **(b)**    Default Interest. If any amount payable hereunder is not paid when due, whether at stated maturity, by acceleration, or otherwise, such overdue amount shall bear interest at the rate of fifteen percent (15%) (the "**Default Rate**").

a.    **(c)**    Computation of Interest. All computations of interest hereunder shall be made on the basis of a year of 365/366 days, as the case may be, and the actual number of days elapsed.

a.    **3.**    <u>Payment. Mechanics</u>.

a.    **(a)**    <u>Manner of Payment</u>. All payments shall be made in U.S. dollars no later than 12:00 PM on the date on which such payment is due. Such payments shall be made by wire transfer of immediately available funds to the Noteholder's account at a bank specified by the Noteholder in writing to the Borrower from time to time.

a.    **(b)**    <u>Application of Payments</u>. All payments shall be applied, *first*, to fees or charges outstanding under this Note, *second*, to accrued interest, and, *third*, to principal outstanding under this Note.

a.    **(c)**    <u>Business Day</u>. Whenever any payment hereunder is due on a day that is not a Business Day, such payment shall be made on the next succeeding Business Day, and interest shall be calculated to include such extension. "**Business Day**" means a day other than Saturday, Sunday, or other day on which commercial banks in New York, NY are authorized or required by law to close.

a.    **4.**    <u>Representations and Warranties</u>. The Borrower represents and warrants to the Noteholder as follows:

a.    **(a)**    <u>Notice</u>. Unless this Note, all promissory notes between Borrower and Noteholder, and all invoice(s) issued by Noteholder to Borrower are previously deemed satisfied in full by Noteholder, Borrower and/or Borrower's independent legal counsel shall notify Noteholder via the three (3) email addresses set forth in Section 9, of the death of Russell Cowles, within thirty (30) days of his death.

b.    **(b)**    <u>Compliance with Law</u>. The Borrower is in compliance with all laws, statutes, ordinances, rules, and regulations applicable to or binding on the Borrower.

a.    **(c)**    <u>Power and Authority</u>. The Borrower has the requisite power and authority to execute, deliver, and perform its obligations under this Note.

a.    **(d)**    <u>Authorization; Execution and Delivery</u>. The execution and delivery of this Note by the Borrower and the performance of her obligations hereunder have been duly authorized in accordance with applicable law. The Borrower has duly executed and delivered this Note.

a.    **5.**    <u>Events of Default</u>. The occurrence and continuance of any of the following shall constitute an "**Event of Default**" hereunder:

a.    **(a)**    <u>Failure to Pay</u>. The Borrower fails to pay any principal, interest, or any other amount due under this Note or any other promissory note between Borrower and Noteholder, or any invoice(s) issued by Noteholder to Borrower, when due.

a.    **(b)**    <u>Breach of Representations and Warranties</u>. Any representation or warranty made by the Borrower to the Noteholder herein contains an untrue or misleading statement of a material fact as of the date made.

a.    **(c)**    Bankruptcy; Insolvency.

i.    (i)    The Borrower institutes a voluntary case seeking relief under any law relating to bankruptcy, insolvency, reorganization, or other relief for debtors.

i.    (ii)    An involuntary case is commenced seeking the liquidation or reorganization of the Borrower under any law relating to bankruptcy or insolvency, and such case is not dismissed or vacated within sixty (60) days of its filing.

i.    (iii)    The Borrower makes a general assignment for the benefit of its creditors.

i.    (iv)    The Borrower is unable, or admits in writing its inability, to pay its debts as they become due.

i.    (v)    A case is commenced against the Borrower or her assets seeking attachment, execution, or similar process against all or a substantial part of her assets, and such case is not dismissed or vacated within sixty (60) days of its filing.

a.    **(d)**    Failure to Give Notice. The Borrower fails to give the notice of Event of Default specified in Section 6.

a.    **6.**    Notice of Event of Default. As soon as possible after it becomes aware that an Event of Default has occurred, and in any event within five (5) Business Days, the Borrower shall notify the Noteholder in writing of the nature and extent of such Event of Default and the action, if any, it has taken or proposes to take with respect to such Event of Default.

a.    **7.**    Remedies. Upon the occurrence and during the continuance of an Event of Default, the Noteholder may, at its option, by written notice to the Borrower declare the outstanding principal amount of the Loan, accrued and unpaid interest thereon, and all other amounts payable hereunder immediately due and payable; *provided, however*, if an Event of Default described in Sections 5(e)(i), (iii), or (iv) shall occur, the outstanding principal amount, accrued and unpaid interest, and all other amounts payable hereunder shall become immediately due and payable without notice, declaration, or other act on the part of the Noteholder.

a.    **8.**    Expenses. The Borrower shall reimburse the Noteholder on demand for all reasonable out-of-pocket costs, expenses, and fees, including the reasonable fees and expenses of counsel, incurred by the Noteholder in connection enforcement of the Noteholder's rights hereunder.

a.    **9.**    Notices. All notices and other communications relating to this Note shall be in writing and shall be deemed given upon the first to occur of (x) deposit with the United States Postal Service or overnight courier service, properly addressed and postage prepaid; (y) transmittal by facsimile or e-mail properly addressed (with written acknowledgment from the intended recipient such as "return receipt requested" function, return e-mail, or other written acknowledgment); or (z) actual receipt by an employee or agent of the other party. Notices hereunder shall be sent to the following addresses, or to such other address as such party shall specify in writing:

a.    (a)    If to the Borrower:

Gretchen Hentsch-Cowles
2201 Long Prairie Road
Suite 107-309
Flower Mound, TX 75022
E-mail:  ghcowles@icloud.com

a.    (b)    If to the Noteholder:

Cole, Scott & Kissane, P.A.
Attention:  Cody German
9150 S. Dadeland Boulevard
Suite 1400, Miami, FL 33156
E-mail:  Cody.German@csklegal.com, Steven.Safra@csklegal.com, and
Richard.Cole@csklegal.com

a.    **10.**    <u>Governing Law</u>. This Note and any claim, controversy, dispute, or cause of action (whether in contract, tort, or otherwise) based on, arising out of, or relating to this Note and the transactions contemplated hereby shall be governed by and construed in accordance with the laws of the State of Florida.

a.    **11.**    <u>Disputes</u>.

a.    (a)    <u>Submission to Jurisdiction</u>.

i.    (i)    The Borrower irrevocably and unconditionally (A) agrees that any action, suit, or proceeding arising from or relating to this Note may be brought in the courts of the State of Florida, sitting in Miami-Dade County, and in the United States District Court for the Southern District of Florida, and (B) submits to the jurisdiction of such courts in any such action, suit, or proceeding. Final judgment against the Borrower in any such action, suit, or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.

i.    (ii)    Nothing in this Section 11(a) shall affect the right of the Noteholder to bring any action, suit, or proceeding relating to this Note against the Borrower or its properties in the courts of any other jurisdiction.

i.    (iii)    Nothing in this <u>Section 11(a)</u> shall affect the right of the Noteholder to serve process upon the Borrower in any manner authorized by the laws of any such jurisdiction.

a.    (b)    <u>Venue</u>. The Borrower irrevocably and unconditionally waives, to the fullest extent permitted by law, (i) any objection that it may now or hereafter have to the laying of venue in any action, suit, or proceeding relating to this Note in any court referred to in <u>Section 11(a)</u>, and (ii) the defense of inconvenient forum to the maintenance of such action, suit, or proceeding in any such court.

a.    (c)    Waiver of Jury Trial. THE BORROWER HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY RELATING TO THIS NOTE OR THE TRANSACTIONS CONTEMPLATED HEREBY, WHETHER BASED ON CONTRACT, TORT, OR ANY OTHER THEORY.

a.    **12.**    Successors and Assigns. This Note may be assigned or transferred by the Noteholder to any individual, corporation, company, limited liability company, trust, joint venture, association, partnership, unincorporated organization, governmental authority, or other entity.   In the event of any assignment or transfer under this Section, Borrower does not waive presentment, demand, diligence, protest and notice of every kind, nor any right to plead any defense to a demand under this Note by a successor or assign to the full extent permitted by law.

a.    **13.**    Amendments and Waivers. No term of this Note may be waived, modified, or amended, except by an instrument in writing signed by the Borrower and the Noteholder. Any waiver of the terms hereof shall be effective only in the specific instance and for the specific purpose given.

a.    **14.**    No Waiver; Cumulative Remedies. No failure by the Noteholder to exercise and no delay in exercising any right, remedy, or power hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any right, remedy, or power hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, or power. The rights, remedies, and powers herein provided are cumulative and not exclusive of any other rights, remedies, or powers provided by law.

a.    **15.**    Severability. If any term or provision of this Note is invalid, illegal, or unenforceable in any jurisdiction, such invalidity, illegality, or unenforceability shall not affect any other term or provision of this Note or render such term or provision invalid or unenforceable in any other jurisdiction.

a.    **16.**    Documentary Stamp Tax Paid. Borrower shall, within five (5) business days of the execution of this Note, pay such documentary stamp taxes that are due to the State of Florida as required by Florida Statute Section 201.08 with such amount not to exceed $2,450 or as otherwise dictated by Florida law.  Florida law requires the payment of a tax equal to 35 cents on each $100 or fraction thereof of the indebtedness or obligation evidenced thereby.

IN WITNESS WHEREOF, the Borrower has executed this Note as of _24th Oct. 2024_ 2024.


GRETCHEN HENTSCH-COWLES

Exhibit 3

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### FORT MYERS DIVISION

RUSSELL COWLES,

        Plaintiff,

    v.

Case No. 2:23-cv-600-KCD-NPM

GRETCHEN HENTSCH-COWLES,

        Defendant.

_____/

## **ORDER**

The law firm of Cole, Scott & Kissane, P.A. ("CSK") has filed a motion asking the Court to settle a bill. (Doc. 246.) After guiding their former client, Defendant Gretchen Hentsch-Cowles, through this litigation to a global settlement, the firm now finds itself at odds with her over when they get paid. CSK wants their fees now, out of the settlement proceeds currently held in escrow. Defendant, pointing to the fine print of the parties' agreement, argues that the debt does not mature until six months after the death of a third party—her ex-husband, Russell Cowles. (Doc. 248.)[1]

The parties have plenty to say about the plain meaning of their contract and whether the promissory notes Defendant also executed serve as a secondary or exclusive payment mechanism. But before we get to the what or

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

when of the fee agreement, we have to look at the where. Specifically, does this dispute belong here? Although the underlying case is technically active on the docket, the answer is no. Because this fee dispute lacks an independent basis for federal jurisdiction and is better understood as a private contract matter, the Court declines to hear it.

We begin with a fundamental principle. Federal courts have limited jurisdiction. We possess only that power authorized by the Constitution and statute. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). It is a first principle of federal jurisdiction that the party seeking to invoke the court's power—here, CSK—bears the burden of establishing that such jurisdiction exists. *Id.* CSK has not carried that burden. Its motion offers no independent jurisdictional hook—no federal question and no diversity of citizenship—that would allow the Court to adjudicate what is, at its core, a state-law debt collection action. *See, e.g.*, *Myers v. Cent. Fla. Invs., Inc.*, No. 604-CV-1542-ORL-28DA, 2010 WL 2541792, at *2 (M.D. Fla. May 26, 2010). Indeed, CSK fails to even mention jurisdiction. (*See* Doc. 246.) Its motion simply presumes that because the Court presided over the underlying litigation, it must also preside over the fallout of their billing relationship. But fee disputes do not automatically create a justiciable controversy. *See, e.g.*, *Broughten v. Voss*, 634 F.2d 880, 882 (5th Cir. 1981); *Gomez v. Lopez*, 353 F. Supp. 3d 1212, 1214 (N.D. Ala. 2018).

2

The only other basis to resolve this dispute is ancillary jurisdiction. *See Am. Fed'n of State, Cnty., & Mun. Emps. (AFSCME) Council 79 v. Scott*, 949 F. Supp. 2d 1239, 1243 (S.D. Fla. 2013) ("[T]he ancillary jurisdiction doctrine is often utilized to adjudicate the resolution of disputes between a party to a federal lawsuit and that party's attorneys over the proper amount of fees due to the attorneys for work performed in the lawsuit."); *see also United States ex rel. Fuentes v. Genzyme Corp.*, No. 8:09-CV-1245-T-23EAJ, 2014 WL 12693528, at *2 (M.D. Fla. May 9, 2014). But ancillary jurisdiction is not a rubber band that stretches to cover any post-settlement squabble. It is instead a narrow doctrine. The idea behind ancillary jurisdiction is that a court may sometimes hear a related claim to "manage its proceedings, vindicate its authority, and effectuate its decrees." *Kokkonen*, 511 U.S. at 380.

Ancillary jurisdiction is a discretionary doctrine, not a mandatory one. It is used against the backdrop that courts "must be cautious in [their] willingness to expand its jurisdiction." *Bruton v. Carnival Corp.*, 916 F. Supp. 2d 1262, 1265 (S.D. Fla. 2012). When deciding whether to wade into these waters, courts typically look to a series of factors designed to ensure that we are not overstepping our bounds. *See Sec. & Exch. Comm'n v. Mut. Benefits Corp.*, No. 04-60573-CIV, 2021 WL 1520643, at *6 (S.D. Fla. Feb. 22, 2021).

First, we consider whether the ancillary matter arises from the transaction that was the basis of the principal proceeding or is integral to the

main proceeding. *Bruton*, 916 F. Supp. 2d at 1266. While the contested fees were earned here, the current dispute centers on a temporary forbearance mechanism involving separate promissory notes. (*See* Doc. 246 at 1-3.) This is a narrow, post-settlement issue regarding payment timing that is logically distinct from the contract claims that formed the core of the underlying suit.

Second, we must ask if the court can resolve the ancillary matter without a substantial new fact-finding proceeding. *Bruton*, 916 F. Supp. 2d at 1266. Here, the road leads straight into a thicket. To decide CSK's motion, the Court would have to adjudicate the parties' intent regarding the exclusivity of the promissory notes and the details of a secondary payment mechanism designed for a client with liquidity concerns. This could require discovery and evidentiary determinations on contractual claims and defenses that are far afield from the underlying (and resolved) litigation.

Third, we look at whether declining jurisdiction deprives the parties of important rights. *Bruton*, 916 F. Supp. 2d at 1266. It does not. CSK can pursue its contract claims in a Florida court, which is well-equipped to handle state-law contract disputes. The discharge of this motion here does not adjudicate the merits of the firm's underlying claim to its earned fees.

Finally, we consider if the matter must be decided to protect the integrity of the proceeding or ensure its disposition is not frustrated. *Mut. Benefits Corp.*, 2021 WL 1520643, at *6. The federal interest here has been satisfied

4

because the parties reached a global resolution of the underlying litigation. (Doc. 237.) Deciding this billing spat is not necessary to render complete justice to the parties regarding the claims they brought in this forum. To involve a federal court in a lawyer's fee dispute that centers on work performed in a now-settled case is an "undue extension" of ancillary jurisdiction. *Bruton*, 916 F. Supp. 2d at 1268.

Comity further counsels against retaining this fee dispute. The power to determine the meaning of state law belongs primarily to state courts. This dispute is governed by Florida law and involves professional conduct standards set by the Florida Bar. Federal courts should be "reluctant to speculate" on such matters when a state court is perfectly capable of handling them. *Pugh v. Wilson*, 693 F. Supp. 1096, 1100 (S.D. Fla. 1988). Furthermore, the parties' final fee agreement points elsewhere. It contains a mandatory forum-selection clause requiring that any action "arising from or related to" the agreement be brought in the trial courts of Miami-Dade County. (Doc. 247-1 at 8.)[2] It would be a strange use of federal power to exercise discretionary jurisdiction over a state-law contract dispute when the parties themselves expressly bargained to have that issue heard in a state forum. When the parties agree on where they want to litigate, we should generally listen.

---

[2] For ease of reference with this composite exhibit, the Court cites the page numbers generated by its electronic filing system.

When the underlying litigation reaches a resolution, as here, the federal court's ancillary jurisdiction should generally reach a conclusion as well. Because CSK has not offered an independent jurisdictional hook for this fee dispute, and it would otherwise require this Court to resolve complex, unrelated contract issues, it will not be heard here. CSK and Defendant are free to litigate the timing of her payments in the courts of Miami-Dade County. For these reasons, it is **ORDERED**:

1. CSK's Motion for Determination of Entitlement to Payment of Attorneys' Fees & Costs Post-Settlement (Doc. 246) is **DENIED WITHOUT PREJUDICE**;

2. Because neither party has filed a valid motion or paper to reopen this case (Doc. 237), it is now final and **CLOSED** per the Court's prior order.

**ENTERED** in Fort Myers, Florida on January 6, 2026.

Kyle C. Dudek
United States District Judge