IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

GRETCHEN HENTSCH-COWLES, CASE NO.: 1:26-cv-21012-CMA

Plaintiff/Counter-Defendant,

v.

COLE, SCOTT & KISSANE, P.A.,

Defendant/Counter-Plaintiff.
_______________________________/

**PLAINTIFF/COUNTER-DEFENDANT'S RESPONSE IN OPPOSITION TO DEFENDANT/COUNTER-PLAINTIFF'S MOTION FOR FINAL SUMMARY JUDGMENT**

Plaintiff/Counter-Defendant, **GRETCHEN HENTSCH-COWLES** ("Plaintiff"), by and through undersigned counsel, and pursuant to Federal Rule of Civil Procedure 6 and Local Rule 56.1 of the United States District Court for the Southern District of Florida, and hereby files this Response in Opposition to Defendant/Counter-Plaintiff **COLE, SCOTT & KISSANE, P.A.**'s ("CSK" or "Defendant") Motion for Final Summary Judgment and Incorporated Memorandum of Law ("Motion"), and states:

## INTRODUCTION

In its Motion, CSK attempts to misdirect this Court and convert a heavily negotiated, attorney-drafted fee arrangement that expressly ties repayment of promissory notes to a very specific event, into a standard hourly fee agreement payable immediately upon demand. However, the foregoing is not what the parties expressly agreed to, nor is it how the pertinent documents read. The parties knowingly and willingly agreed to a deferred payment structure.

Following a brief substitution of counsel, Plaintiff reengaged CSK, and entered into an Amended Engagement Agreement (the "Agreement"). At CSK's insistence, Plaintiff agreed to guaranteed hourly fees, increased billing rates, and the execution of multiple promissory notes (each bearing interest), specifically designed to secure CSK's fees with full knowledge that Plaintiff required a future contingent event of inheritance to pay for said fees. Said Agreement governed the framework of CSK's representation of Plaintiff, including the guaranteed hourly fee structure, fee accrual, billing practices, and how those fees would be documented. The Agreement further required that accrued fees be documented and accounted for through the use of promissory notes issued in $50,000.00 increments, rather than immediate payment coming due on a monthly basis.

Each promissory note contains identical repayment language. Specifically, each provides that the full amount owed "shall be due and payable six (6) months following the death of Russell Cowles." The Declaration of Gretchen Hentsch-Cowles is attached hereto as Exhibit A, and will be referenced as the "Declaration," Composite Exhibits 4 and 5. The promissory notes further provide that Plaintiff "may prepay the Loan… in whole or in part at any time… without penalty." *Id.* The promissory notes contain no provision requiring payment upon settlement, no acceleration clause, and no language permitting CSK to demand payment before the stated maturity date. They do not in any way contain language that would permit CSK to abscond with funds designated for direct receipt by Hentsch Cowles as per the settlement agreement, as CSK has now done since November 2025.

The Agreement and promissory notes were drafted by CSK, reviewed by Plaintiff's independent counsel, and executed only after CSK insisted on a structure that protected the firm from non-payment by ensuring repayment of the promissory notes based upon the death of Russell

Cowles and the subsequent inheritance of Plaintiff. After accepting the promissory notes and otherwise performing under the terms thereof for months, CSK now seeks to rewrite that structure by ignoring the promissory notes' explicit maturity provisions and the Agreement's express acknowledgment that Plaintiff "may not be able to pay CSK until after her father passes away and she receives an inheritance." Declaration, ¶2, Exhibit 1, p. 2, lines 1-3. That language is not gratuitous; it was the central premise of the renegotiated relationship.

Defendant's Motion asks this Court to disregard the express maturity provision in the promissory notes, the intent and language of the Agreement, and impose an immediate payment obligation that does not exist in any of the documents. The governing promissory notes and Agreement are unambiguous and, as a matter of law, do not permit the relief CSK seeks. Because courts must enforce unambiguous contracts as written, Defendant's motion fails as a matter of law.

## STANDARD

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In both moving for and opposing summary judgment, arguments "that a fact cannot be or is genuinely disputed must [be] support[ed]" by:

> [C]iting to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or[ ] showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1)(A), (B).

However, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tolan v. Cotton*, 572 U.S. 650, 651 (2014) (quoting *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Further, "the burden is placed on the moving party to establish both the absence of a genuine material fact and that it is entitled to judgment as a matter of law." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). All reasonable doubts must therefore be resolved in favor of the non-moving party. *Anderson*, 477 U.S. at 255. But to overcome a motion for summary judgment, the non-movant must nonetheless show—not based solely on the pleadings, but by citation to "materials in the record"—that specific facts exist that demonstrate a genuine issue for trial. *See* Fed. R. Civ. P. 56(c), (e); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (requiring "the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial") (internal quotations omitted). "[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment," as "the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48 (emphasis in original). "A court need not permit a case to go to a jury[ ] when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'" *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 743 (11th Cir. 1996) (citing *Matsushita Elec. Indus. Co.*, 475 U.S. at 592-94). "Where the evidence is circumstantial, a court may grant summary judgment when it concludes that no reasonable jury may infer from the assumed facts the conclusion upon which the non-movant's claim rests." *Id.*

**SUMMARY OF ARGUMENT**

Although Plaintiff agrees, in part, with Defendant's claims that this is purely a contractual dispute, summary judgment for the Defendant is inappropriate at this time. As a threshold matter, the parties have not yet exchanged initial disclosures, nor have they conducted formal discovery.

While communications between the parties are readily available without conducting discovery, Plaintiff is entitled to obtain additional internal communications of CSK concerning the engagement agreement(s). These internal communications may be dispositive to the claims before the Court. Additionally, a reasonable jury could find that under the terms of the promissory notes, Defendant agreed to a specific maturity date, contingent on the death of Russel Cowles, controlling and governing the relationship of the parties. In the context of potential ambiguity in the underlying Agreement and promissory notes, and with issues of material fact clouding a determination of when payment is due, the question of CSK's unauthorized retention of the settlement funds cannot be resolved as a matter of law, on summary judgment.

Specifically, summary judgment is not appropriate because there is a genuine issue of material fact in interpreting the repayment terms of the Agreement when read with the promissory notes, which govern the specific timing of payment due. The promissory notes contain the same unambiguous payment provision, and clear maturity dates tied to Plaintiff's father's death. CSK cannot use summary judgment in an attempt to rewrite those terms now that settlement funds have been tendered by the settling parties. Following settlement of the underlying litigation giving rise to the instant claims, CSK failed to invoke any contractual right to immediate payment, because it simply could not. Instead, in an attempt to circumvent the terms of the promissory notes, Defendant proposed that Plaintiff voluntarily pay a portion of the fees immediately, with the remainder left "subject to the promissory notes." CSK also acknowledged, *in writing*, that it had no right to take settlement funds without Plaintiff's agreement. Despite these admissions, and in direct contradiction of federal authority prohibiting attorney interference with settlement proceeds, Defendant immediately attempted to obtain payment from the settlement proceeds by unilaterally

directing that funds be wired to its trust account without authorization. For these reasons, CSK has not met its burden under Rule 56, and its Motion must be denied.

The question before this Court is not, as CSK attempts to frame it, whether the Amended Engagement Agreement requires immediate payment from settlement proceeds because it is independent of the promissory notes- or, more simply put, whether payment is now due in light of settlement proceeds. The question is whether CSK may accelerate payment of those fees in the face of contractual language expressly deferring payment until six (6) months after the death of Russell Cowles. The answer is unequivocally no.

## ARGUMENT

### I. Summary Judgment Must Be Denied Because There are Genuine Issues of Material Fact in Dispute.

CSK's Motion depends on the theory that payment became immediately due upon the availability of, or otherwise, CSK's receipt of Plaintiff's settlement proceeds. CSK now asks this Court to ignore the plain language of the promissory notes and accelerate payment based solely on its post-hoc dissatisfaction with the timing of the deal it chose. That theory is not supported by either the Agreement or the promissory notes themselves. Although the Agreement governs the relationship between the parties, including the general framework and expectations regarding work product, billing structure and timing, the Agreement is silent with respect to maturity or acceleration of amounts due thereunder. In fact, the promissory notes contain the only applicable provisions that address when payment is due. Each promissory note provides that payment, "shall be due and payable," six months after the death of Russell Cowles. Declaration ¶13, Composite Exhibits 4 and 5, ¶1(a). The use of the word "shall" establishes a mandatory obligation and fixes the maturity date. *Maine Cmty. Health Options v. United States*, 590 U.S. 296, 310 (2020).

The promissory notes do not reference settlement proceeds, liquidity, or any other triggering event. They do not contain an acceleration clause. They do not permit CSK to demand payment before the stated maturity date. However, In Defendant's Motion, the same terms are read and presented to this Court differently, or otherwise creating ambiguity, barring summary judgment. "[W]here a contract's terms are clear and unambiguous, the court looks no further than the plain meaning of the language used in the contract as the best expression of the parties' intent." *Grove Harbour Marina v. Grove Bay Inv. Grp., LLC*, 48 Fla. L. Weekly D1095, –So.3d –, 2023 WL 3728700 (Fla. 3d DCA May 31, 2023). But "[i]n cases where a contract is ambiguous, summary judgment is usually improper." *N. Florida Mango, LP v. LLS Holdings, LLC*, 375 So. 3d 906, 911 (Fla. 4th DCA 2023) (quoting *Nationstar Mortg. Co. v. Levine*, 216 So. 3d 711, 714 (Fla. 4th DCA 2017)). A contract is ambiguous when it is "susceptible to more than one reasonable interpretation." *Fernandez v. Seaboard Marine Ltd.*, 135 F.4th 939, 951 (11th Cir. 2025). The Agreement governs fee accrual; the promissory notes govern maturity. Where two provisions address the same subject, the more specific governs. *Esys Latin Am., Inc. v. Intel Corp.*, 925 F. Supp. 2d 1306, 1314 (S.D. Fla. 2013).

CSK's Motion is riddled with factual misrepresentations. Declaratory relief requires a purely legal dispute. *Hogan v. Praetorian Ins. Co.*, 2018 WL 8266803 (S.D. Fla. 2018). Here, at least two reasonable interpretations exist; first, that under CSK's view, that payment is due immediately upon issuing of a monthly statement (not a billing statement or invoice as otherwise claimed by Defendant); and second, Plaintiff's view, that payment is due upon the maturity of the promissory notes, which expressly tie repayment to inheritance. Neither the promissory notes nor the Agreement reference settlement or recovery of any kind as triggers requiring payment, and the promissory notes themselves only offer *optional* prepayment. Declaration ¶15, Composite Exhibits

4 and 5. CSK cannot obtain declaratory relief based on a hypothetical future breach where no present payment obligation exists. As the instant Motion and all supporting documents convey an entirely different, but still wholly plausible interpretation of the contractual terms at issue in Defendant's Motion, summary judgment is improper.

**II. The Amended Engagement Agreement Expressly Contemplates Deferred Payment Until Inheritance.**

CSK, the drafting party of the pertinent Agreement and promissory notes, knowingly and willingly entered into the Agreement with the expectation that payment would be deferred for some time, likely up and until the death of Russel Cowles. The Agreement itself acknowledges that Plaintiff, "may not be able to pay CSK until after her father passes away and she receives an inheritance." Declaration ¶6, Composite Exhibit 2. In its Motion, CSK refers to this provision as a "recital," but Florida law gives effect to all contract language, including recitals, when they reflect the parties' intent. *Energy Smart Indus., LLC v. Morning View Hotels-Beverly Hills, LLC,* 112 F. Supp. 3d 1330, 1335 (S.D. Fla. 2015), *aff'd sub nom. Energy Smart Indus., LLC v. Morning Views Hotels-Beverly Hills, LLC*, 660 Fed. Appx. 859 (11th Cir. 2016) (quoting *Whitley v. Royal Trails Prop. Owners' Ass'n, Inc.,* 910 So.2d 381, 383 (Fla. 5th DCA 2005) ("In interpreting a contract, the Court is to give effect to the intention of the parties, and the best evidence of their intent is the contract's plain language.")

CSK's Motion argues that the promissory notes cannot govern the timing of payment because the Agreement did not designate the promissory notes as the "exclusive" method of payment. That contention is not only legally incorrect—it is contractually impossible given the Agreement's own language. CSK's motion improperly conflates the accrual of fees under the Engagement Agreement with the contractual maturity of those fees under the promissory notes.

The Agreement itself states that additional fees would be secured by additional promissory notes in $50,000.00 increments. Declaration ¶6, Exhibit 1, Composite Exhibit 2. The language in both the Agreement and the promissory notes governing repayment timing- i.e., the death of Russell Cowles, is not incidental—it was the *reason* the parties renegotiated the fee arrangement upon reengagement of CSK and agreed to the execution of promissory notes. The use of promissory notes shows that CSK and Plaintiff agreed that all ongoing and future fees would be handled through promissory notes; the promissory notes were not optional, but the contractually designated and agreed upon structure for payment and timing of payment; the parties agreed to the same maturity mechanism for all promissory notes; and the promissory notes governed past due, present and all future fees. CSK cannot now argue that the promissory notes were a mere secondary mechanism, when the Agreement expressly states that subsequent fees would be recorded in identical promissory notes with the same terms, including the same deferred maturity date. CSK's argument is internally inconsistent.

CSK argues out of both sides of its's mouth, contending that the promissory notes were "secondary," or optional, and alternatively that the Agreement expressly required that future billed fees also be accounted for pursuant to executed promissory notes. A payment structure cannot be "secondary" when the contract says it will be used every time additional fees accrue. Had the parties intended early payment upon settlement, judgment, or any liquidity event, the Agreement would have explicitly written as much. Instead, the Agreement repeatedly confirms that payment would be handled through ongoing promissory notes with identical terms and more importantly, maturity dates. At a minimum, the Motion and this Response creates a factual dispute regarding whether the parties intended to allow deferred payment.

**III. The Promissory Notes Contain Clear Maturity Dates That CSK Cannot Ignore.**

Each promissory note contains a maturity date tied to Plaintiff's inheritance, and a right, but not an obligation, to prepay. CSK's Motion fails to identify any contractual provision that permits it to override the express maturity date contained in every promissory note. Pursuant to the unambiguous payment provision of the promissory notes defining the maturity date as one tied to Plaintiff's father's passing, CSK's demanding of accelerated immediate payment is not proper, nor permissible. Declaration ¶¶13-15, Composite Exhibits 4 and 5. Notwithstanding, nothing in the Agreement required payment prior to the maturity date as argued by CSK. Declaration ¶16, Exhibit 1, Composite Exhibit 4 and 5.

CSK argues that because Plaintiff *may* prepay, she *must* prepay. That is not the law. A permissive prepayment clause does not override an express maturity date. Courts must give effect to all pertinent contractual provisions. *Julian Depot Miami, LLC v. Home Depot U.S.A., Inc.*, 364 F. Supp. 3d 1354, 1359 (S.D. Fla. 2018). As already stated above, and highlighted herein, under black-letter contract law, when two agreements address the same subject matter (here, the Notes and Engagement Agreement), the more specific, later-executed contract governs timing. *Esys Latin Am., Inc. v. Intel Corp.*, 925 F. Supp. 2d 1306, 1314 (S.D. Fla. 2013) *citing Crastvell Trading Ltd. v. Marengere*, 90 So.3d 349, 353 (Fla. 4th DCA 2012) ("It is a well-settled principle of contract law that a contract provision specifically dealing with a particular subject matter controls over a provision generally dealing with that same subject matter." The Notes define *when* payment is due. CSK seeks early payment because the case was settled, but the Notes do not tie payment to liquidity, settlement, recovery, or any other contingency.

CSK knew and accepted this structure. CSK acknowledged in writing that: "If you think CSK is going to take some of your settlement money… without an agreement with you… you are mistaken." Declaration ¶41, Exhibit 18. These admissions foreclose CSK's current theory. A party

cannot disavow its own prior written interpretation of a contract when litigation arises. CSK argues the Agreement does not expressly state that the promissory notes are the "exclusive" remedy. But that argument is legally irrelevant, circular, and contradicted by the very purpose of the promissory notes. The promissory notes set the maturity date, or more simply put, the "due date." The Agreement sets the hourly rate, interest rate, and general framework between the parties. These provisions do not conflict but rather operate together. As CSK drafted both documents, it cannot now ask the Court to rewrite them, and perhaps more egregiously, rewrite them at the cost of Plaintiff. CSK's interpretation would render the maturity date meaningless—an outcome impermissible pursuant to Florida law. Furthermore, Defendant's claim that absent a due date, which Plaintiff does not concede based on the clear language discussed above herein, the "reasonable time" doctrine does not apply where the parties expressly agreed to a specific maturity date.

**IV. Ambiguities in Attorney-Client Fee Agreements Are Construed Against the Attorney.**

Assuming, *arguendo*, that this Court finds ambiguity in the terms of the Agreement, promissory notes, or both, the law is clear, "[a]mbiguities in attorney-client fee contracts are construed against the attorney." *Lugassy v. Indep. Fire Ins. Co.*, 636 So.2d 1332 (Fla. 1994). CSK drafted the Agreement and the promissory notes. Even the provisions requested by Plaintiff were disregarded later in their relationship. Plaintiff's Response to Defendant's Statement of Undisputed Material Facts and Plaintiff's Additional Facts, ¶13. Any ambiguity must be resolved in Plaintiff's favor.

Here, CSK was not only the drafter, it insisted on this structure. The promissory notes deliberately tie payment to Russell Cowles's death, not Plaintiff's liquidity. CSK now attempts to

disavow the structure *it created*, simply because Plaintiff obtained a settlement. The Court should reject that rewriting. If CSK's theory that the Agreement allowed immediate collection whenever Plaintiff had money, then the promissory notes' maturity date, the Agreement's requirement that future fees be secured through additional promissory notes, and the entire structure created to accommodate Plaintiff's financial realities would be rendered meaningless. Florida courts do not interpret contracts in a way that renders provisions superfluous. *Excelsior Ins. Co. v. Pomona Park Bar & Package Store*, 369 So. 2d 938, 941 (Fla. 1979). CSK's Motion asks exactly that. Because the Agreement expressly requires that future fees be secured through additional promissory notes containing the same deferred maturity structure, CSK's argument that the promissory notes do not govern timing is contrary to the terms therein, contrary to its own drafting, and contrary to Florida law. The promissory notes were the agreed mechanism for timing, and the Court must enforce them as written.

**V. Elevated Hourly Rates and Interest Justify Delayed Payment Structure.**

The true consideration between the parties in the instant matter is a higher billing rate, and therefore more money due and owing. CSK did not agree to deferred payment based on its sympathy towards Plaintiff. In fact, CSK agreed to the terms of the Agreement and the promissory notes because it was compensated for deferred payment through materially higher hourly rates and a substantial interest rate on the promissory notes. Pursuant to the Agreement, Plaintiff was charged a higher hourly rate (substantially higher than industry rates) than the CSK standard rate, expressly reflecting the risk and inconvenience CSK associated with deferred payment. Declaration ¶23, Composite Exhibit 8. In addition, the promissory notes bear interest at eight percent (8%), a rate that significantly exceeds ordinary commercial lending rates and was specifically designed to compensate CSK for waiting to be paid until a future event, to wit, the

death of Russell Cowles. Furthermore, CSK added to the Agreement, that a 15% interest would be applied if Plaintiff did not pay CSK after six (6) months of Russell Cowles death. Declaration ¶6, Composite Exhibit 2.

These specific economic features were not incidental to the reengagement, and instead were the consideration CSK demanded in exchange for accepting a client with limited present liquidity. Simply put, Plaintiff was penalized for deferred payment based on higher hourly billing rates/fees and interest on fees. There was never any uncertainty as to whether CSK would be paid, but as the maturity date explicitly states when CSK would be paid. CSK's compensation was front loaded for the deferred payment, through increased rates, and on the back end through interest on the promissory notes. CSK's interpretation eliminates the very risk allocation it negotiated: accepting delayed payment in exchange for higher rates and interest. Now, CSK seeks to have it both ways. It asks this Court to: (i) enforce the higher hourly rates; (ii) enforce the 8% interest rate; (iii) ignore the deferred maturity provisions that justified those concessions; and allow immediate payment from settlement funds despite the absence of any acceleration clause.

That position is not merely inconsistent, it is inequitable. CSK cannot accept the benefits of a delayed payment bargain while repudiating the burden it agreed to bear. Allowing CSK to collect immediately, at elevated rates, with interest, would grant it a windfall and rewrite the parties' deal. This context is critical to understanding why CSK's current position is so egregious. CSK was not misled, undercompensated, or left unsecured. It structured the engagement to protect itself fully and profitably, while accommodating Ms. Hentsch-Cowles's circumstances. Its attempt to disregard that structure now is not contract enforcement; it is opportunism.

**VI. No Right to Self-Help.**

Notwithstanding Plaintiff's foregoing position, even if a payment dispute existed, and continues to exist, nothing in the Agreement or the promissory notes authorized CSK to unilaterally seize or redirect settlement proceeds. CSK's Motion fails to address this, as there is no defense to their actions when construed in light of the negotiated terms between the parties.

## CONCLUSION

CSK has not met its burden under Rule 56. The Amended Engagement Agreement and promissory notes are ambiguous, contain conflicting provisions, and require factual development regarding the parties' intent. Under Florida law, ambiguities in attorney-client fee agreements must be construed against CSK as drafter.

For these reasons, Plaintiff respectfully requests that the Court deny CSK's Motion for Final Summary Judgment in its entirety.

WHEREFORE, Defendant respectfully requests that the Court:

1. Deny CSK's Motion in its entirety;
2. Order the disputed funds released to Plaintiff immediately;
3. Reserve jurisdiction to award Defendant fees for responding to this motion pursuant to the Agreement; and
4. Grant all other relief the Court deems appropriate.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on or about April 17, 2026 a true and accurate copy of the foregoing was served on counsel of record via the CM/ECF system. For parties that do not receive Notices of Electronic Filing, the undersigned further certifies that a copy of the foregoing documents was served upon the parties via mail or as otherwise indicated.

*/s/ Albert D. Gibson*
Albert D. Gibson
Florida Bar No. 50765

adg@gibsonlawfirmpa.com
service@gibsonlawfirmpa.com

**THE GIBSON LAW FIRM, P.A.**
4720 Salisbury Road, 247-04
Jacksonville, Florida 32256
Telephone: 561-501-7858
*Counsel for Plaintiff*