UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:26-cv-21012-CMA

GRETCHEN HENTSCH-COWLES,
Plaintiff/Counter-Defendant,

v.

COLE, SCOTT & KISSANE, P.A.,
Defendant/Counter-Plaintiff.

_____________________________________/

**DECLARATION OF GRETCHEN HENTSCH-COWLES**

I, Gretchen Hentsch-Cowles, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

1. I am the Plaintiff in this action and have personal knowledge of the facts set forth herein.
2. I originally retained Cole, Scott & Kissane, P.A. ("CSK") in connection with litigation pending in the United States District Court for the Middle District of Florida, on or about September 7, 2023. A true and correct copy of the Engagement Agreement to Serve as Counsel to Gretchen Hentsch-Cowles ("Client") in Lawsuit Filed by Russell Cowles in Florida ("Original Agreement") is attached hereto as Exhibit 1.
3. Between September 2023 and February 2024, I paid a total of $50,383.25 to CSK for services rendered.
4. In May 2024, I substituted counsel and CSK no longer represented me in the Middle District of Florida federal case.
5. At the time of substitution of counsel, an outstanding amount of $32,527.00 was admittedly owed to CSK.
6. Thereafter, I reengaged CSK as counsel to represent me in the Middle District of Florida federal case, and after some negotiations between my personal outside counsel on my behalf and CSK, I agreed to terms under which payment of CSK's fees would be deferred

based on my anticipated inheritance, as reflected in promissory notes tied to my father's passing. In exchange, I would execute promissory notes in increments of $50,000.00. Copies of the October 11, 2024 email, October 16, 2024 email, and October 23, 2024 email are attached hereto as Composite Exhibit 2.

7. During the negotiations, I specifically requested that a provision be inserted into the promissory notes allowing me, solely at my option, to repay the notes from recovery in the lawsuit. *See* Composite Exhibit 2.

8. On or about October 24, 2024, I entered into an Amended Engagement Agreement with CSK. A true and correct copy of the Amended Engagement Agreement is attached hereto as Exhibit 3.

9. As part of the Amended Engagement Agreement, I executed a promissory note in the amount of $32,527.59, and another one for the first increment of $50,000.00. Copies of the promissory notes are attached hereto as Composite Exhibit 4.

10. At the time of negotiating and entering into the Amended Engagement Agreement, CSK expressly understood and acknowledged that payment of its fees would be delayed for a significant period of time depending on when I received an inheritance.

11. Attached as Composite Exhibit 2 is a true and correct copy of an email dated October 11, 2024 from Cody German of CSK stating that due to this being a "unique situation" because payment timing was uncertain and could be "many years depending on when [my] inheritance arrives" the proposed use of promissory notes bearing interest was favored.

12. After reengaging CSK as counsel, I executed additional promissory notes, as required in $50,000.00 increments. Copies of the additional promissory notes are attached hereto as Composite Exhibit 5.

13. Each promissory note provides that amounts "…shall be due and payable six (6) months following the death of Russell Cowles." *See* Composite Exhibit 4 and Composite Exhibit 5.

14. The promissory notes define a specific maturity date tied to my father's passing and permit, but do not require, earlier payment from other sources such as a settlement or judgment. *See* Composite Exhibit 4 and Composite Exhibit 5.

15. Each promissory note provides that I "…may prepay the Loan…" "…in whole or in part at any time… without penalty." *See* Composite Exhibit 4 and Composite Exhibit 5.

16. Nothing in the Amended Engagement Agreement or the promissory notes requires payment upon settlement or judgment. *See* Exhibit 1, Composite Exhibit 4, and Composite Exhibit 5.

17. At no time prior to April 2025 did CSK assert that it had a contractual right to require payment of its fees from any settlement proceeds.

18. Mediation in the Middle District of Florida federal case went forward on March 13, 2025.

19. Following mediation, due to CSK observing Russell Cowles in perceived good health, on April 2, 2025, CSK requested that the existing payment structure be modified, and in an email proposed revising the payment terms so that legal fees would be paid upon the earlier of (a) settlement, (b) judgment, or (c) the death of Russell Cowles. A true and correct copy of the April 2, 2025 email is attached hereto as Exhibit 6.

20. CSK further acknowledged that, under the existing agreements, it could be required to wait for payment for many years and that prepayment remained optional, and on April 2, 2025, CSK proposed, for the first time, to modify the payment terms to require payment upon

settlement or judgment, confirming that no such requirement existed under the existing agreements. *See* Exhibit 6.

21. During this time, CSK acknowledged that the original terms of reengagement that remained in effect, making prepayment optional, and would result in CSK potentially waiting for many years for payment, demanding modification of the terms. *See* Exhibit 6.

22. Due to the fact that “circumstances [had] changed-” i.e. that there were financial settlement offers being discussed that were not on the table at the time of reengagement of CSK, and that CSK realized that Russell Cowles may not pass away sooner than they expected, CSK was now demanding modification of the promissory notes and the Amended Engagement Agreement to require acceleration of the terms of repayment. A true and correct copy of an email dated April 2, 2025 is attached hereto as Exhibit 7.

23. Cody German of CSK inquired as to the age of Russell Cowles and verbally stated to Hentsch-Cowles in September 2023 that Russell Cowles would probably not be living by the time this case terminated.

24. The terms of the Amended Engagement Agreement and promissory notes, “…contemplated payment after Russel’s passing…” and my outside counsel conveyed this on my behalf to CSK, asserting that making changes at this stage in litigation/settlement was not acceptable. True and correct copies of two emails dated April 4, 2025 are attached hereto as Composite Exhibit 8.

25. I did not agree to modify the promissory notes nor the payment terms as proposed by CSK.

26. No amendment to the Amended Engagement Agreement or the promissory notes was never executed.

27. After April 4, 2025, I continued to execute promissory notes consistent with the original Amended Engagement Agreement and promissory note form which CSK repeatedly accepted. *See* Composite Exhibit 4 and Composite Exhibit 5.

28. During the course of CSK's representation, CSK advised me to consider settlement and discussed the benefits of settlement proceeds for me and my family's financial stability and security, with an ability to move on with the settlement funds, and at no time did CSK represent that it had a contractual right to payment from settlement proceeds. Attached as Exhibit 9 is a true and correct copy of an email dated March 5, 2025 from Cody German discussing settlement and its benefits to me and my family.

29. After settlement discussions progressed, CSK continued accepting the promissory notes, but proposed voluntary payment to CSK in the event of a settlement, acknowledging that no such agreement or right to settlement/judgment funds existed between me and CSK. A true and correct copy of an email dated April 18, 2025 is attached hereto as Exhibit 10.

30. In October 2025, the Middle District of Florida federal case settled.

31. Subsequently, CSK proposed that I voluntarily pay a portion of its fees from the settlement funds, with the remainder to remain subject to the promissory notes. A true and correct copy of an email dated November 11, 2025 is attached hereto as Exhibit 11.

32. CSK described payment from any settlement as a potential or preferred outcome, optional and subject to my agreement, but not as a contractual requirement, and no provision in the Amended Engagement Agreement or promissory notes required payment upon settlement. *See* Exhibit 11; Composite Exhibit 2.

33. That same day, I responded to CSK that they held promissory notes totaling $479,382.94, in accordance with the Amended Engagement Agreement and promissory notes, and that

wiring instructions for the settlement funds would be forthcoming. A copy of the November 11, 2025 email is attached hereto as Exhibit 12.

34. The settlement agreement expressly stated that funds from the settlement would be directly directed to me, not CSK.

35. In response, CSK advised me that they were no longer agreeing to rely solely on promissory notes and wait until my father passed away. A copy of the November 11, 2025 email from CSK is attached hereto as Exhibit 13.

36. Beginning on November 12, 2025, I provided CSK with the wiring instructions for payment of $750,000.00 to me, per the terms of the settlement. I followed up several times requesting confirmation from CSK that the wiring instructions were provided to the settling parties. True and correct copies of the November 12, 2025 email, November 13, 2025 email, and November 13, 2025 additional email are attached hereto as Composite Exhibit 14.

37. On November 17, 2025, CSK advised me that they provided wiring instructions to their own firm trust account immediately post mediation in October 2025, unbeknownst to me. A true and correct copy of the November 17, 2025 email is attached hereto as Exhibit 15.

38. Instead, CSK, through its general counsel, stated that it intended to enter a charging lien if I refused to agree to the wiring of the settlement proceeds through its trust account. A true and correct copy of the November 17, 2025 email is attached hereto as Exhibit 16.

39. Attached as Exhibit 17 is a November 18, 2025 email wherein I advised CSK that I did not authorize CSK to direct settlement funds to its firm trust account, and asked for correction of the wiring instructions.

40. CSK received settlement funds into its trust account.

41. I did not authorize CSK to direct settlement funds to itself or to take payment from settlement proceeds without my agreement.

42. I provided specific wiring instructions directing that settlement funds be distributed to me. CSK was not authorized to alter those instructions, retain funds, or condition distribution on payment of its fees, yet it asserted control over the funds and attempted to impose payment terms inconsistent with the governing agreements. *See* Exhibit 17.

43. CSK acknowledged, in writing, that it could not "take some of [my] settlement money to pay down [their] legal bill without an agreement from [me]…," yet that is exactly what CSK has effectively done. A true and correct copy of the November 13, 2025 email is attached hereto as Exhibit 18.

44. To date, I have received 33% of the settlement funds solely intended for me from the October 2025 settlement. CSK egregiously retains 66% of the settlement funds.

45. CSK's current position—that it is entitled to immediate payment from settlement proceeds—is inconsistent with the Amended Engagement Agreement, which very clearly states that payment is not contingent on a particular result being obtained in the litigation, the promissory notes, and CSK's own prior statements and conduct.

46. I have reviewed records attached hereto, all documents, emails and correspondences, and I certify that these are exact duplicates of originals sent to or held by me.

47. I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 17 day of April, 2026, in 2026.

G Hentsch-Cowles
Gretchen Hentsch-Cowles