IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

GRETCHEN HENTSCH-COWLES, CASE NO.: 1:26-cv-21012-CMA

Plaintiff/Counter-Defendant,

v.

COLE, SCOTT & KISSANE, P.A.,

Defendant/Counter-Plaintiff.
_______________________________/

**PLAINTIFF/COUNTER-DEFENDANT'S RESPONSE TO DEFENDANT/COUNTER-PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS AND PLAINTIFF/COUNTER-DEFENDANT'S ADDITIONAL FACTS**

Plaintiff/Counter-Defendant, GRETCHEN HENTSCH-COWLES ("Plaintiff"), pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1 of the United States District Court for the Southern District of Florida, responds to Defendant/Counter-Plaintiff COLE, SCOTT & KISSANE, P.A.'s ("CSK") Statement of Undisputed Material Facts as follows:

1. Undisputed.
2. Undisputed.
3. Undisputed.
4. Disputed. The portion cited by CSK fails to account for the full provision, explaining repayment terms, of the Amended Engagement Agreement which reads: "IN CONSIDERATION of the services rendered in representing CLIENT, and to account for the anticipation that the CLIENT may not be able to pay CSK for the services rendered until after her father passes away and she receives an inheritance as a result of same, from the date of this Agreement forward, CLIENT hereby agrees to pay hourly

for legal services rendered….subject to the Billing Guidelines enclosed…. Counterclaim, Exhibit B, p. 2, ¶2 [ECF No. 8-2].

5. Disputed. The Amended Engagement Agreement states that "CSK will render monthly statements to CLIENT…," not monthly billing statements. Counterclaim, Exhibit B, p. 3, line 5 [ECF No. 8-2].
6. Undisputed.
7. Undisputed.
8. Disputed. The Amended Engagement Agreement provides for Plaintiff to sign promissory notes each time legal fees and costs accrued up to $50,000.00, in increments, based on the monthly statements delivered by CSK. Counterclaim, Exhibit B, p. 3, lines 6-7 [ECF No. 8-2].
9. Disputed. The Amended Engagement Agreement provided that Plaintiff was to execute future promissory notes that were the same or substantially similar to the initial promissory note, and although references the deferred interest rate, the promissory notes themselves specify the interest rate of 8% and when said interest rate commenced for each specific promissory note. Only one of the original promissory notes [Counterclaim, Exhibit C, p. 6, ¶3(a) [ECF No. 8-3]] includes language wherein interest was deferred for a period of eight (8) months following execution, with the remaining promissory notes listing the interest rate as commencing on June 1, 2024, despite the date of execution. Counterclaim, Exhibit C, p. 1, ¶2(a); p. 6, ¶3(a); p. 12, ¶2(a); p. 17, ¶2(a); p. 22, ¶2(a); p. 27, ¶2(a); p. 32, ¶2(a); p. 37, ¶2(a); p. 42, ¶2(a); p. 47, ¶2(a); p. 53, ¶2(a) [ECF No. 8-3].

10. Disputed. All except for one promissory note executed by Plaintiff [Counterclaim, Exhibit C, p. 6, ¶ 3(a) [ECF No. 8-3]] provide that interest began accruing as of June 1, 2024, regardless of execution date. Counterclaim, Exhibit C, p. 1, ¶2(a); p. 6, ¶3(a); p. 12, ¶2(a); p. 17, ¶2(a); p. 22, ¶2(a); p. 27, ¶2(a); p. 32, ¶2(a); p. 37, ¶2(a); p. 42, ¶2(a); p. 47, ¶2(a); p. 53, ¶2(a) [ECF No. 8-3].
11. Undisputed.
12. Undisputed.
13. Disputed. The Amended Engagement Agreement specifically states that the structure for repayment is based on the fact that Plaintiff "…may not be able to pay CSK…until after her father passes away and she receives an inheritance." Counterclaim, Exhibit B, p. 2, lines 1-3 [ECF No. 8-2]. Although the original September 6, 2023 Engagement Agreement no longer governs the relationship between the parties, the headings themselves, such as the use of "Fees" in the original agreement, requiring payment for earned fees immediately upon invoicing, versus the use of "Guaranteed Hourly Fees" in the Amended Engagement Agreement, which effectively refers to compensation that is contractually promised but not presently due, highlight the fact that CSK recognized and was aware that the Amended Engagement Agreement and promissory notes establish that repayment was structured based on Plaintiff's anticipated inability to pay until after her father's death, and the promissory notes define the only contractual maturity dates governing when payment becomes due. Counterclaim, Exhibit A, p. 1, ¶3 [ECF No. 8-1]; Counterclaim Exhibit B, p. 2, ¶2 [ECF No. 8-2]. Further, each promissory note ties the "Maturity Date," or the due date for payment, to Plaintiff's inheritance. While some promissory notes include the provision that the loan "Maturity

Date" is "…six (6) months after the passing of Russell Cowles or the disposition of the formal administration of Russell Cowles' Estate, whichever is later." Counterclaim, Exhibit C, p. 1, ¶1(a); p. 6, ¶2(a) [ECF No. 8-3]. Other promissory notes define the "Maturity Date" as "…six (6) months following the death of Russell Cowles…;" regardless, each "Maturity Date" is defined and tied directly to the death of Russell Cowles and Plaintiff obtaining her inheritance. Counterclaim, Exhibit C, p. 12, ¶1(a); p. 17, ¶1(a); p. 22, ¶1(a); p. 27, ¶1(a); p. 32, ¶1(a); p. 37, ¶1(a); p. 42, ¶1(a); p. 47, ¶1(a); p. 53, ¶1(a) [ECF No. 8-3].

14. Disputed. Again, and as stated above herein, the Amended Engagement Agreement specifically states that the structure for repayment, including the use of promissory notes, is based on the fact that Plaintiff "…may not be able to pay CSK…until after her father passes away and she receives an inheritance." Counterclaim, Exhibit B, p. 2, lines 1-3 [ECF No. 8-2]. Based on this, CSK drafted the Amended Engagement Agreement and promissory notes to accrue in $50,000.00 increments, based on monthly statements, each of which is payable, or due- i.e. the "Maturity Date," six (6) months after the death of Russell Cowles. Counterclaim, Exhibit C, p. 1, ¶1(a); p. 6, ¶2(a); p. 12, ¶1(a); p. 17, ¶1(a); p. 22, ¶1(a); p. 27, ¶1(a); p. 32, ¶1(a); p. 37, ¶1(a); p. 42, ¶1(a); p. 47, ¶1(a); p. 53, ¶1(a) [ECF No. 8-3].

15. Disputed. The promissory notes govern repayment timing, whereas the Amended Engagement Agreement governs fee accrual and timing of the issuance of any promissory notes based on the $50,000.00 increments required by CSK. No provision in either the Amended Engagement Agreement or the promissory notes permit CSK to demand payment prior to the contractual maturity dates set forth in the notes.

Counterclaim, Exhibit C, p. 1, ¶1(a); p. 6, ¶2(a); p. 12, ¶1(a); p. 17, ¶1(a); p. 22, ¶1(a); p. 27, ¶1(a); p. 32, ¶1(a); p. 37, ¶1(a); p. 42, ¶1(a); p. 47, ¶1(a); p. 53, ¶1(a) [ECF No. 8-3]; Counterclaim, Exhibit B, p. 2, ¶2, p. 3, ¶2 [ECF No. 8-2].

16. Disputed. CSK represented Plaintiff pursuant to the Amended Engagement Agreement, and based upon the understanding that Plaintiff would "..not be able to pay CSK for the services rendered until after her father passe[d] away and she receives an inheritance as a result of same…," Plaintiff was required to execute "commercially standard promissory notes each time the legal fees and costs incurred increase in $50,000.00 increments… "…signed in conjunction of [the] Agreement…." Counterclaim, Exhibit B, p. 2, lines 9-11; p. 3, lines 6-7; 9 [ECF No. 8-2].
17. Disputed. The federal litigation did resolve through settlement, as alleged by Plaintiff, pursuant to a written Settlement Agreement; however, the characterization of the amount as substantial is conclusory in nature, giving it no probative value. Complaint ¶13 [ECF No. 1-1].
18. Undisputed.
19. Disputed. CSK requested immediate payment from the potential settlement funds, then unilaterally withheld settlement funds that were to be paid to Plaintiff.
20. Disputed. Plaintiff executed promissory notes in the full amount owed to CSK, pursuant to the Amended Engagement Agreement. Counterclaim, Exhibit C [ECF No. 8-3]; Exhibit A, Gretchen Hentsch-Cowles Declaration, ¶¶12-13.
21. Undisputed.
22. Undisputed.

23. Disputed. The promissory notes govern the timing and enforceability of payment because they contain the only maturity provisions establishing when any amounts become due and payable. Complaint, ¶10 [ECF No. 1-1]; Counterclaim, Exhibit C [ECF No. 8-3].

24. Disputed. Plaintiff's realization from settlement includes only a partial payment which is insufficient to satisfy fees and costs. The majority of settlement funds remain in CSK's possession, and of those funds, the majority are to be maintained in trust for her children. Exhibit A, Gretchen Hentsch-Cowles Declaration, ¶41.

25. Disputed. Although the settlement in October 2025 resulted in some funds being paid directly to Plaintiff, the characterization of CSK's outstanding fees as significantly less than the settlement proceeds obtained by Plaintiff is blatantly incorrect, giving it no probative value. In fact, Plaintiff's realization from the settlement proceeds, even the amounts being held by CSK in its trust account, are insufficient to satisfy CSK's fees. Further, the funds were never obtained by Plaintiff, as they remain in CSK's possession, and were never otherwise transmitted to Plaintiff. Complaint ¶13 [ECF No. 1-1]; Complaint, ¶20 [ECF No. 1-1]; Exhibit A, Gretchen Hentsch-Cowles Declaration, ¶¶ 37-41.

26. Disputed. CSK directed the vast majority of settlement proceeds designated for Plaintiff to its own trust account prior to any judicial determination of entitlement and without contractual authorization permitting such action, resulting in 66% of the settlement $750,000.00 of Plaintiff's settlement proceeds remaining in CSK's trust account. Complaint, ¶¶19-20 [ECF No. 1-1]; Exhibit A, Gretchen Hentsch-Cowles Declaration, ¶¶ 37-41

27. Disputed. The present and actual controversy concerns whether CSK is entitled to demand payment prior to the contractual maturity dates set forth in the promissory notes. Complaint, ¶37 [ECF No. 1-1].

## ADDITIONAL FACTS

28. On October 24, 2024, CSK and Plaintiff entered into an Amended Engagement Agreement, which states, "…to account for the anticipation that the CLIENT may not be able to pay CSK for the services rendered until after her father passes away and she receives an inheritance as a result of same…," CSK would issue monthly statements, based on which Plaintiff agreed "…to sign commercially standard promissory notes each time the legal fees and costs incurred increase in $50,000.00 increments." Counterclaim, Exhibit B, p. 2, lines 9-12; p. 3, lines 5-7 [ECF No. 8-2].
29. Each promissory note expressly provides that the amounts due thereunder are payable six (6) months following the death of Russell Cowles. Counterclaim, Exhibit C, p. 1, ¶1(a); p. 6, ¶2(a); p. 12, ¶1(a); p. 17, ¶1(a); p. 22, ¶1(a); p. 27, ¶1(a); p. 32, ¶1(a); p. 37, ¶1(a); p. 42, ¶1(a); p. 47, ¶1(a); p. 53, ¶1(a) [ECF No. 8-3].
30. The Amended Engagement Agreement also requires that Plaintiff or Plaintiff's counsel "…notify CSK within thirty (30) days after Russell Cowles passes away…." Counterclaim, Exhibit B, p. 3, lines 20-22 [ECF No. 8-2].
31. Russell Cowles is alive. Complaint, ¶12 [ECF No. 8-1].
32. Each promissory note permits prepayment at Plaintiff's option, expressly providing that Plaintiff "may prepay the Loan, all accrued and unpaid interest, and all other amounts payable under this Note in whole or in part at any time or from time to time without penalty." Counterclaim, Exhibit C, p. 1, ¶1(b); p. 6, ¶2(b); p. 12, ¶1(b); p. 17,

¶1(b); p. 22, ¶1(b); p. 27, ¶1(b); p. 32, ¶1(b); p. 37, ¶1(b); p. 42, ¶1(b); p. 47, ¶1(b); p. 53, ¶1(b) [ECF No. 8-3].

33. The original promissory notes permit voluntary prepayment by "any other means," but none of the promissory notes impose any obligation requiring payment prior to the stated maturity dates. Counterclaim, Exhibit C, p. 1, ¶1(b); p. 6, ¶2(b); p. 12, ¶1(b); p. 17, ¶1(b); p. 22, ¶1(b); p. 27, ¶1(b); p. 32, ¶1(b); p. 37, ¶1(b); p. 42, ¶1(b); p. 47, ¶1(b); p. 53, ¶1(b) [ECF No. 8-3].

34. During negotiations, Plaintiff, through independent counsel, requested that additional language be included in the promissory notes reflecting that payment could be made from recovery in the lawsuit. Exhibit A, Gretchen Hentsch-Cowles Declaration, ¶7.

35. CSK, through counsel, represented that it was "fine with language allowing" Plaintiff to pay from recovery in the lawsuit. *Id.*

36. The requested payment language was only included in the two original promissory notes dated October 24, 2024, totaling $82, 257.59, and not included in the remaining promissory notes. Counterclaim, Exhibit C, p. 1, ¶1(b); p. 6, ¶2(b) [ECF No. 8-3].

37. On April 2, 2025, CSK, for the first time, requests that the promissory notes be updated to include a clause that it would "…be paid from the earlier of: (a) a settlement in Gretchen's favor, (b) a judgment in Gretchen's favor, or (c) the death of Russell." Exhibit A, Gretchen Hentsch-Cowles Declaration, ¶¶ 19-21.

38. Ultimately, the promissory notes were not revised to include CSK's requested provision requiring payment from Plaintiff from settlement proceeds. Counterclaim, Exhibit C [ECF No. 8-3].

39. Between October 24, 2024 and November 25, 2025, Plaintiff executed and delivered multiple promissory notes to CSK, and CSK accepted those promissory notes. Counterclaim, Exhibit C [ECF No. 8-3].

40. Plaintiff's independent counsel expressly advised CSK that Plaintiff had no obligation to make advance payment on the promissory notes, and that her only obligation was to continue issuing promissory notes for services rendered, which she did. Exhibit A, Gretchen Hentsch-Cowles Declaration, ¶22.

41. The promissory notes do not contain an acceleration clause tied to settlement, liquidity, or recovery of funds. Complaint, ¶11 [ECF No. 1-1].

42. None of the promissory notes contain any provision permitting acceleration of payment based on settlement, recovery, or availability of funds. Complaint, ¶11 [ECF No. 1-1]; Counterclaim, Exhibit C [ECF No. 8-3].

43. The Amended Engagement Agreement does not contain any provision requiring payment based on settlement, liquidity, or recovery of funds. Counterclaim, Exhibit B [ECF No. 8-2].

44. On October 30, 2025, Plaintiff and other parties to the federal litigation settled, executing a written Settlement Agreement. Complaint, ¶13 [ECF No. 1-1]; Counterclaim, ¶13 [ECF No. 8].

45. Plaintiff provided wiring instructions to CSK, to forward to the proper parties and ensure payment was made pursuant to the Settlement Agreement. Exhibit A, Gretchen Hentsch-Cowles Declaration, ¶¶34.

46. Following settlement, despite the existence of the promissory notes governing payment timing, CSK began demanding that a portion of the settlement proceeds be paid

immediately toward its legal fees. Exhibit A, Gretchen Hentsch-Cowles Declaration, ¶¶30-32.

47. CSK proposed that half of the outstanding balance be paid from the settlement and the remainder remain subject to the promissory notes, a proposal not contemplated by any written agreement between the parties. Exhibit A, Gretchen Hentsch-Cowles Declaration, ¶30.

48. CSK provided, immediately post-settlement, its own trust account wiring instructions, not Plaintiff's, to the settling parties. Complaint, ¶18 [ECF No. 1-1]; Exhibit A, Gretchen Hentsch-Cowles Declaration, ¶35.

49. Plaintiff did not authorize CSK to direct settlement funds to its own trust account or to withhold any portion of those funds. Exhibit A, Gretchen Hentsch-Cowles Declaration, ¶37.

50. Plaintiff expressly objected to CSK's wiring of the settlement funds to its own trust account, and demanded that CSK correct the wiring instructions to ensure that the funds were delivered in accordance with the Settlement Agreement. *Id.*

51. The settlement funds were wired to CSK's trust account and remain there at this time. Complaint, ¶20 [ECF No. 1-1]; Counterclaim, ¶35 [ECF No. 8].

52. Plaintiff has never agreed to CSK retaining any portion of settlement funds. Exhibit A, Gretchen Hentsch-Cowles Declaration, ¶39.

53. The Amended Engagement Agreement expressly provides that payment is not contingent on any particular result being obtained, yet, CSK demanded payment based on Plaintiff's settlement of the litigation. Counterclaim, Exhibit B, p. 5 [ECF No. 8-2]; Exhibit A, Gretchen Hentsch-Cowles Declaration, ¶42.

54. CSK, through its general counsel, advised Plaintiff that it would pursue a charging lien and cause the settlement funds to be interpleaded if its demands of entitlement to the settlement proceeds were not met. Exhibit A, Gretchen Hentsch-Cowles Declaration, ¶36.

55. Thereafter, CSK filed a Motion for Determination of Entitlement to Payment of Attorneys' Fees & Costs Post-Settlement, in *Cowles v. Hentsch-Cowles*, Case No. 2:23-cv-600-KCD-NPM (M.D. Fla. Jan. 6, 2026), which was denied on January 6, 2026. Complaint, ¶23, Exhibit 3 [ECF No. 1-1].

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on or about April 17, 2026 a true and accurate copy of the foregoing was served on counsel of record via the CM/ECF system. For parties that do not receive Notices of Electronic Filing, the undersigned further certifies that a copy of the foregoing documents was served upon the parties via mail or as otherwise indicated.

*/s/ Albert D. Gibson*
Albert D. Gibson
Florida Bar No. 50765
adg@gibsonlawfirmpa.com
service@gibsonlawfirmpa.com

**THE GIBSON LAW FIRM, P.A.**
4720 Salisbury Road, 247-04
Jacksonville, Florida 32256
Telephone: 561-501-7858
*Counsel for Plaintiff*