IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

GRETCHEN HENTSCH-COWLES, CASE NO.: 1:26-cv-21012-CMA

Plaintiff/Counter-Defendant,

COLE, SCOTT & KISSANE, P.A.,

Defendant/Counter-Plaintiff.
_______________________________/

**DEFENDANT/COUNTER-PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR FINAL SUMMARY JUDGMENT**

COMES NOW, Defendant/Counter-Plaintiff, COLE, SCOTT & KISSANE, P.A. (hereinafter, "Defendant" or "CSK"), by and through undersigned counsel, and pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1 of the United States District Court for the Southern District of Florida, hereby files this Reply in Support of its Motion for Summary Judgment [D.E. 28], and in support thereof, states as follows:

**INTRODUCTION**

Plaintiff/Counter-Defendant, Gretchen Hentsch-Cowles' ("Plaintiff" or "Hentsch-Cowles") Response in Opposition (the "Response" or the "Opposition") confirms that this case presents exactly what Defendant said it does: a pure question of contract interpretation based on undisputed written agreements. Rather than identify any ambiguity in those agreements, Plaintiff attempts to avoid summary judgment by importing extrinsic evidence such as post-settlement negotiations with CSK on how CSK would agree in settlement to allow a portion of its fees to be paid by Hentsch-Cowles from the settlement reached and some later on subject to promissory notes, subjective intent, and post-agreement conduct, all in an effort to rewrite the parties' bargain. That approach fails as a matter of law because Florida courts have consistently held where contract language is unambiguous, courts must enforce the agreement as written and may not consider parol

or extrinsic evidence to vary its terms. *See Bucacci v. Boutin*, 933 So.2d 580, 583 (Fla. 3d DCA 2006). Here, Plaintiff never identifies a single contractual provision that is reasonably susceptible to more than one interpretation. Accordingly, that failure is dispositive and Defendant is entitled to summary judgment as a matter of law.

**ARGUMENT AND MEMORANDUM OF LAW**

**I. A Promissory Note Given as Collateral Does Not Become an Exclusive Means of Payment.**

Under Florida law, a promissory note given as collateral security for a separate underlying obligation does not become the exclusive means of payment or remedy absent clear contractual language to that effect. Rather, the underlying obligation and the collateral instrument remain legally distinct, and the creditor retains the ability to pursue all available remedies. In *Schick v. Browarnik,* 121 So. 2d 690 (Fla. 3d DCA 1960), the court held that a party may proceed on the collateral note, pursue a breach of the underlying agreement, or both, confirming that the existence of collateral does not extinguish or limit the holder's rights. Likewise, in *Fontainebleau Hotel Corp. v. James Talcott, Inc*., 164 So. 2d 264 (Fla. 3d DCA 1964), the court emphasized that an action on a pledged note is independent of the underlying obligation and merely serves to reduce the collateral to judgment, further reinforcing the separation between the two. The decision in *Progressive Builders, Inc. v. Florida Wide Developers, Inc*., 142 So. 2d 122 (Fla. 3d DCA 1962), similarly makes clear that courts may not recharacterize instruments as collateral beyond their intended purpose. Applied here, the promissory notes were executed to secure payment obligations under the Amended Engagement Agreement in the event of a shortfall, not to replace or supplant those obligations. Nothing in the governing agreements provides that the notes constitute the exclusive means of payment. In sum, a promissory note used as collateral does not supplant or

limit the underlying obligation, and courts may not rewrite the parties' agreements to make it the exclusive means of payment absent clear contractual language.

**II. Plaintiff Fails to Identify Any Ambiguity and That Failure is Dispositive.**

Plaintiff's Opposition hinges on the assertion that "issues of material fact" preclude summary judgment. But the only "issues" Plaintiff identifies arise not from the contract language, but from extrinsic materials she contends reflect intent.

Nevertheless, that is not how ambiguity is established. Under Florida law, attorney fee agreements, including engagement letters, are governed by general contract principles and the Rules Regulating the Florida Bar and Florida courts consistently analyze these agreements under common law contract principles. *See Feldman v. Davis*, 53 So.3d 1132 (Fla. 4th DCA 2011); see also *Guy Bennett Rubin, P.A. v. Guettler*, 73 So.3d 809 (Fla. 4th DCA 2011). Under Florida law, a contract is ambiguous only if it is susceptible to more than one reasonable interpretation based on its plain language. *Fernandez v. Seaboard Marine LTD.*, 135 F.4th 939, 951 (11th Cir. 2025). Critically, "the mere fact that the parties disagree as to the meaning of a contract does not in itself create an ambiguity." *Flagstar Bank, FSB v. Hochstadt*, 405 F. App'x 374, 375–76 (11th Cir. 2010); *see Fernandez*, 135 F.4th at 951 ("But just because the parties disagree on the meaning of a contractual term does not mean the contract is ambiguous.").

Here, Plaintiff never identifies any conflicting contractual provisions, any undefined or uncertain terms, or any language susceptible to competing reasonable interpretations. Instead, Plaintiff assumes ambiguity and then attempts to prove it through surrounding circumstances. Because Plaintiff cannot identify ambiguity within the four corners of the agreements, the Court must enforce them as written.

**III. The Contracts Unambiguously Do Not Prohibit Present Payment.**

Plaintiff's theory depends entirely on a limitation that does not exist: that payment of legal fees is *prohibited* unless and until her father's death. However, no such restriction appears anywhere in the governing agreements. Critically, if the parties, each represented by separate counsel in negotiating the Amended Engagement Agreement, intended for the promissory notes to serve as the exclusive means by which CSK would be paid, they could have, and would have, expressly so provided in the agreement. No such language appears anywhere in the Amended Engagement Agreement.

Instead, the Amended Engagement Agreement imposes a present obligation to pay hourly legal fees as they are incurred and invoiced. *See* Def.'s Mot. Summ. J., Ex. A [D.E. 28-1], p. 2 ("CLIENT hereby agrees to pay hourly for legal services rendered…"); p. 3 (requiring monthly statements). Nothing in that Agreement conditions payment on a future inheritance or restricts the source of payment. *Id.* The promissory notes likewise do not impose any prohibition on payment. They establish a maturity date — i.e., the latest point at which payment must be made — not the earliest point at which it may be made. *See* Def.'s Mot. Summ. J., Ex. A [D.E. 28-1], p. 8 (Borrower "may prepay the Loan… at any time… without penalty" and repayment may occur through "judgments… settlements… or inheritance"). In addition, Plaintiff's own declaration confirms this point: the notes "permit, but do not require, earlier payment from other sources such as a settlement or judgment." Hentsch-Cowles Decl. ¶ 14 [D.E.32-1].

Plaintiff's interpretation would invert the contract's structure by converting a permissive prepayment provision into a mandatory restriction on payment. Florida law does not permit courts to rewrite contracts to add limitations the parties did not include. *MedFirst Corp. v. Cmty. Health Plan of the Rockies, Inc.*, 143 Fed. Appx. 146, 149 (11th Cir. 2005) ("[W]here a contract is silent as to a particular matter, courts should not, under the guise of construction, impose on parties

contractual rights and duties which they themselves omitted.") (quoting *BMW of N. Am., Inc. v. Krathen*, 471 So.2d 585, 587 (Fla. 4th DCA 1985)). Here, the plain language controls — and it forecloses Plaintiff's theory.

**IV. Plaintiff's Reliance on Extrinsic Evidence Is Improper.**

When the terms of a voluntary contract are clear and unambiguous, the contracting parties are bound by those terms, and a court is powerless to rewrite the contract to make it more reasonable or advantageous for one of the contracting parties. *Ernie Haire Ford, Inc. v. Ford Motor Co.*, 260 F.3d 1285, 1290 (11th Cir. 2001) (applying Florida law). In *Reuter v. Lancet Indemnity Risk Retention Group, Inc.*, 262 F.Supp.3d 1341 (S.D. Fla. 2017), the Southern District of Florida held that "a court may not rewrite a contract, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties."

Further, the Eleventh Circuit has explained that "parol evidence is only admissible where a party seeking to introduce such evidence can establish that the document is ambiguous." *Solymar Investments, Ltd. v. Banco Santander S.A.*, 672 F.3d 981, 991 (11th Cir. 2012) (explaining *Fla. Bar v. Frederick*, 756 So.2d 79 (Fla. 2000)). Nevertheless, Plaintiff is wholly unable to identify ambiguity in the contract language and instead Plaintiff relies almost exclusively on extrinsic evidence (emails, negotiations, and her own declaration) to support her interpretation. That evidence is legally irrelevant because Florida's parol evidence rule prohibits the use of extrinsic evidence to contradict, vary, defeat, or modify a complete and unambiguous written instrument. *Shiloh Christian Ctr. v. Aspen Specialty Ins. Co.*, 65 F.4th 623, 627 (11th Cir. 2023) ("It is well established under Florida law that parol evidence is inadmissible to vary or contradict the clear and unambiguous language of a contract.") (quoting V*encor Hosps. v. Blue Cross Blue Shield of R.I.*, 284 F.3d 1174, 1179 (11th Cir. 2002)); *In re Yates Dev., Inc.*, 256 F.3d 1285, 1289 (11th Cir.

2001) ("[U]nder Florida law, the parol evidence rule bars admission of extrinsic evidence which would vary or contradict the unambiguous language of a contract.").

This is "especially true when the contract contains an integration clause indicating that the parties intended the written agreement to be the entire agreement." *Shiloh.*, 65 F.4th at 627 (quoting *In re Yates Dev., Inc.*, 256 F.3d 1285, 1290 (11th Cir. 2001)) (applying Florida law). Here, the Amended Engagement Agreement contains an express merger clause. *See* Def.'s Mot. Summ. J., Ex. A [D.E. 28-1], p. 5 ("This Agreement contains the entire understanding of the relationship between the Client and CSK and there are no other agreements, promises, or undertakings between them except as set forth herein.").

Because the Agreement is unambiguous, this Court may not consider (a) alleged negotiations leading up to execution (Hentsch-Cowles Decl. ¶¶ 6–12 [D.E.32-1]); (b) subjective understandings of the parties (Hentsch-Cowles Decl. ¶ 10 [D.E.32-1]); or (c) post hoc explanations offered through declaration testimony and emails (Hentsch-Cowles Decl. ¶¶ 19–22, 29–32 [D.E.32-1]). Plaintiff's submission of such evidence is not a substitute for ambiguity. *Solymar Investments, Ltd. v. Banco Santander S.A.*, 672 F.3d 981, 991 (11th Cir. 2012) ("Thus, where a contract is facially complete and contains no ambiguous terms, Florida law requires those contracts be enforced in accordance with their terms."); *Castillo Marenco v. J.C. Painting Contractor LLC*, No. 24-CV-21463, 2025 WL 814826, at *6 (S.D. Fla. Mar. 14, 2025) ("[T]he court's role is to enforce the contract as written, not to rewrite the contract to make it more reasonable for one of the parties.") (citation modified).

## V. Post-Agreement Settlement Discussions and Unexecuted Proposals Do Not Modify or Interpret The Contract.

Plaintiff also relies heavily on post-agreement communications and settlement-related discussions to suggest that payment was intended to be deferred absent agreement. Hentsch-

Cowles Decl. ¶¶ 19–22, 29–32 [D.E.32-1]. Those arguments fail for as matter of law because Florida law "does not permit proof of an oral agreement for the purpose of imposing a further contractual obligation on one of the parties, of which there is no indication or suggestion in the written contract, when such obligation is not only inconsistent with, but repugnant to, other plain terms of the instrument." *Ungerleider v. Gordon*, 214 F.3d 1279, 1285 (11th Cir. 2000) (applying Florida law). It is not necessary to do so because the agreements at issue lack ambiguity, but CSK could likewise submit communications such as the below refuting Plaintiff's purported evidence that she uses to try to create a dispute over the interpretation of the agreement.

**From:** Cody German
**To:** Gretchen H-C
**Cc:** Yanez, Anthony R.
**Bcc:** Russell Cowles v. Gretchen Hentsch Cowles _5888_4097_00_ Correspondence
**Subject:** RE: Settlement number 2025-6-2
**Date:** Monday, June 2, 2025 3:22:22 PM
**Attachments:** image001.png

I do not agree with the below (only getting a percentage of my fees paid upon settlement) but I understand what you are saying as far as your own personal evaluation.

**From:** Gretchen H-C <gretchenhc@proton.me>
**Sent:** Monday, June 2, 2025 3:06 PM
**To:** Cody German <Cody.German@csklegal.com>
**Cc:** Yanez, Anthony R. <ayanez@hodgsonruss.com>
**Subject:** RE: Settlement number 2025-6-2

I did say 50%, and the final number will vary simply because the legs fees will continue increasing, so after a few weeks, the percentage goes down or the settlement number needs to go up, correlated to your bill and the settlement number, if that makes sense?

Gretchen Hentsch-Cowles
+1.214.980.5419 mobile

On Monday, June 2nd, 2025 at 14:38, Cody German <Cody.German@csklegal.com> wrote:

> Yes, but you said 50% of my fees. I don't agree to that amount either but we can deal with that later. I have your $[redacted] offer and will convey within the timing we discussed. As mentioned, I continue to believe that the more realistic settlement number would be more likely in the $[redacted] range [redacted]

**From:** Cody German
**To:** Gretchen H-C
**Cc:** Hillary Sharp Dimitri; Yanez, Anthony R.; Steven R. Hicks-Safra, General Counsel
**Subject:** RE: Wire transfer details for GHC
**Date:** Wednesday, November 12, 2025 2:45:02 PM
**Attachments:** image162159.png

Gretchen,

You are ignoring the outstanding bills to my firm and my proposal in that regard, which I find disappointing. With due respect, it has been a point for much time that CSK does not agree to wait for full payment until your father's passing at some uncertain date in the future. Anthony also assured me that this issue would be discussed once the case was settled.

I presented what I believe is a very reasonable proposal. Please get back to me at your earliest opportunity. This is an important matter that needs to be addressed.

The mere fact that CSK tried to amicably resolve this dispute with its former client before it reached this level does not create an ambiguity on the interpretation of the subject agreements. And, here, Plaintiff's communications confirm that no such limitations exist in the Amended Engagement Agreement. Plaintiff's own evidence shows that Defendant proposed modifying the payment structure to require payment upon settlement, and that Plaintiff ultimately refused. Hentsch-Cowles Decl. ¶¶ 19–22, 25–26 [D.E.32-1]. That sequence is dispositive because if the contract already imposed the limitation Plaintiff now asserts, no modification would have been necessary. The fact that modification was proposed, and rejected, confirms that no such term existed in the governing agreements.

## VI. Plaintiff's "Fairness" Arguments Are Irrelevant And Misleading

Plaintiff attempts to shift the focus from contract interpretation to perceived inequity, arguing that Defendant's fees are disproportionate and that she received only a portion of the settlement proceeds. Hentsch-Cowles Decl. ¶ 44 [D.E.32-1]. Moreover, Plaintiff's assertions are also misleading given that Plaintiff omits that her family received substantial additional financial benefits, including a significant distribution to her children and forgiveness of a $300,000 contractual obligation to her father. Thus, Plaintiff deceptively portrays CSK's fees as too high even those fees are actually less than 1/3 of the net value of the settlement to Plaintiff and her family.

Regardless, all of those arguments are irrelevant. Courts do not rewrite unambiguous contracts based on a party's after-the-fact dissatisfaction with the outcome. *In re 274 Atl. Isles, LLC*, 651 B.R. 319, 330 (Bankr. S.D. Fla. 2023) ("As a general rule though, a court cannot rewrite a contract based on what is essentially an after-the-fact change of heart."); *see also Local Access, LLC v. Peerless Network, Inc.,* No. 6:17-CV-236-WWB-EJK, 2023 WL 8701190, at *8 (M.D. Fla.

Dec. 15, 2023) ("Indeed, [a]fter-the-fact disappointment with the results of a contract is not a ground for nullifying the contract's express terms.") (citation modified). The issue before the Court is not fairness; it is what the contracts require.

**VII. Plaintiff's Request For Discovery Cannot Defeat Summary Judgment.**

Finally, Plaintiff contends that discovery is necessary to explore internal communications and intent. That argument fails as a matter of law when no one disputes the authenticity of the written contracts at issue. Because this case presents a pure question of law, summary judgment is not premature. *Fernandez*, 135 F.4th at 951 ("There are no issues of fact for a jury to decide unless an ambiguous contract term forces [us] to turn to extrinsic evidence of the parties' intent.") (citation modified). Thus, where a contract is unambiguous, intent is determined from the contract itself, and extrinsic discovery is neither necessary nor permissible. *Office Depot, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.,* 734 F. Supp. 2d 1304, 1318 (S.D. Fla. 2010), *aff'd sub nom. Office Depot, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA,* 453 Fed. Appx. 871 (11th Cir. 2011) ("Generally, courts presume that the intent of the parties to a contract resides in the language they have chosen to employ in their agreement. If the language is clear and unambiguous, the court cannot create a new contract by finding an intent not expressed in the language used by the parties.").

## CONCLUSION

Ultimately, the dispositive issue before the Court is a straightforward question of contract interpretation: whether the payment terms set forth in the Amended Engagement Agreement were altered or invalidated by the promissory notes executed to secure those obligations. This is a pure question of law that must be resolved based on the governing contractual language, and it cannot be obscured by Plaintiff's attempt to inject extrinsic matters that are separate from, and irrelevant

to, the parties' written agreements. The logical connection between the promissory notes and the Amended Engagement Agreement is straightforward: because there was no guarantee that Plaintiff, as a defendant and counter-plaintiff in the underlying matter, would obtain a net recovery sufficient to satisfy CSK's legal fees and costs, the promissory notes were executed to secure any potential shortfall; however, that contingency never materialized here, as Plaintiff ultimately received sufficient settlement proceeds to fully pay CSK's fees and costs at the time those settlement payments were made. *See De Cespedes v. Bolanos*, 711 So.2d 216 (Fla. 3d DCA 1998) (recognizing "the general Florida rule is that when a contract does not expressly fix the time for performance of its terms, the law will imply a reasonable time").

Plaintiff's Opposition does not identify a single ambiguous contractual provision. Instead, it invites the Court to disregard the plain language of the agreements and rewrite them based on extrinsic evidence and post-hoc dissatisfaction. As discussed above, Florida law forbids that approach. The governing contracts are unambiguous: they impose a present obligation to pay earned legal fees and do not prohibit payment from available funds. Because Plaintiff's arguments depend entirely on legally irrelevant extrinsic evidence, they cannot defeat summary judgment.

Accordingly, Defendant respectfully requests that the Court grant its Motion for Final Summary Judgment in full.

WHEREFORE, Defendant/Counter-Plaintiff, COLE, SCOTT & KISSANE, P.A., respectfully requests that this Court enter summary judgment in its favor on the Counterclaim for Declaratory Relief, award CSK entitlement to its attorneys' fees and costs as authorized by the Amended Engagement Agreement, and grant such other and further relief as the Court deems just and proper.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this April 24, 2026, a true and correct copy of the foregoing was filed with the Clerk of the Court via CM/ECF, which will send notice of electronic filing to all counsel of record.

**COLE, SCOTT & KISSANE, P.A.**
*Counsel for Defendant COLE, SCOTT & KISSANE, P.A*
Cole, Scott & Kissane Building
9150 South Dadeland Boulevard, Suite 1400
P.O. Box 569015
Miami, Florida 33256
Telephone (786) 300-3941
Facsimile (305) 373-2294
Primary e-mail: cody.german@csklegal.com
Primary e-mail: hillary.sharpdimitri@csklegal.com
Secondary e-mail: alessandra.aller@csklegal.com

By: *<u>/s/ Hillary M. Sharp Dimitri</u>*
JOHN CODY GERMAN
Florida Bar No.: 58654
HILLARY M. SHARP DIMITRI
Florida Bar No.: 1023574